**Job CARRETE–MICHEL, Petitioner,**

v.

**IMMIGRATION AND NATURALIZATION SERVICE, Respondent.**

No. 84–1011.

United States Court of Appeals, Eighth Circuit.

Submitted June 13, 1984.

Decided Nov. 28, 1984.

Rehearing Denied Feb. 8, 1985.

See also, D.C., 575 F.Supp. 150.

Robert Frager, Kansas City, Mo., for petitioner.

David V. Bernal, Susan Heftel, Washington, D.C., for respondent.

Before LAY, Chief Judge, HEANEY, Circuit Judge, and COLLINSON,* Senior District Judge.

---

* The Honorable William R. Collinson, Senior United States District Judge for the Eastern and Western Districts of Missouri, sitting by designation.

HEANEY, Circuit Judge.

Job Carrete-Michel appeals a Board of Immigration Appeals (BIA) decision affirming an Immigration Judge's (IJ) denial of his petition for suspension of deportation, and a BIA decision denying his motion to reopen, reconsider and remand. For the reasons stated below, we reverse and remand for further proceedings.

Carrete-Michel, a native and citizen of Mexico, entered the United States in 1967, leaving behind his eight children and his wife, Juana Mendes-Salgado. Although Carrete-Michel claimed that his wife told him she was going to obtain a divorce, she never did so. In 1968, Carrete-Michel married Carmen F. Pacheco, a United States citizen. Shortly thereafter, Carrete-Michel returned to Mexico where he obtained an immigration visa as the spouse of a United States citizen. Pacheco and Carrete-Michel lived together in Kansas City, Missouri for eight years. During these years, Carrete-Michel held a steady job, never received welfare, never committed a crime, paid his taxes and all his bills, and established a reputation as an industrious worker, a person of good moral character, a regular church-goer, and an asset to his community. He maintained close contacts with his brother (a United States citizen) and his many cousins in the United States, many of whom were also United States citizens. Each year he also sent substantial portions of his income to Mexico to support his mother, his children and Mendes-Salgado. He visited his family in Mexico in 1971, 1972, 1974, and 1977. In 1972, Mendes-Salgado gave birth to Carrete-Michel's ninth child.

In 1976, Pacheco divorced Carrete-Michel. Also in 1976, two of Carrete-Michel's children illegally immigrated and came to live with him in Kansas City, Missouri. In 1977, he purchased a home in Kansas City, and shortly thereafter Mendes-Salgado and the remaining seven children illegally entered the United States and came to live with him. Carrete-Michel continued to hold a steady job, his children enrolled and excelled in school, and the family was well-accepted in the local community.

In November of 1978, the Immigration and Naturalization Service (INS) instituted deportation proceedings against Carrete-Michel. After a hearing, an IJ found deportability and scheduled another hearing to determine whether Carrete-Michel was eligible for suspension of deportation under 8 U.S.C. § 1254(a)(1). The IJ denied his application on the ground he had not shown that deportation would cause him "extreme hardship." The BIA affirmed and also held that, even if Carrete-Michel proved extreme hardship, it would deny his application on the ground that Carrete-Michel had deceived the government and had given mendacious testimony before the IJ. The BIA thereafter rejected Carrete-Michel's motion to reopen his proceedings, and this appeal followed.

## I. Suspension of Deportation

The Attorney General[1] may suspend deportation and admit an alien for permanent residence if the alien (1) has been present in this country for at least seven years immediately preceding his application, (2) has been a person of good moral character for the same period, and (3) is a person whose deportation would result in extreme hardship to himself, or to his spouse, parent or child who is a citizen of the United States or an alien lawfully admitted for permanent residence. 8 U.S.C. § 1254(a)(1) (1982). Whether "extreme hardship" was established is the only one of these requirements at issue here.[2] Carrete-Michel also challenges the BIA's determination that even if extreme hardship was established, suspension would be denied because of his alleged deception of the government and the IJ.

---

**1.** The Attorney General has delegated his authority to enforce 8 U.S.C. § 1254(a)(1) (1982) to specified authorities in the Immigration and Naturalization Service. 8 C.F.R. § 2.1 (1984).

**2.** The IJ found that Carrete-Michel satisfied the seven year residence requirement, but found it unnecessary to resolve the good moral character requirement.

The BIA may construe extreme hardship narrowly. *Immigration and Naturalization Service v. Wang,* 450 U.S. 139, 145, 101 S.Ct. 1027, 1031, 67 L.Ed.2d 123 (1981) (per curiam). Our inquiry is limited to whether the BIA abused its discretion, exercising it in a way that was arbitrary, irrational or contrary to law. *Id.* The BIA must consider all factors relevant to the hardship determination. *Zavala-Bonilla v. Immigration and Naturalization Service,* 730 F.2d 562, 567 (9th Cir. 1984); *Antoine-Doncelli v. Immigration and Naturalization Service,* 703 F.2d 19, 21 (1st Cir.1983); *Santana-Figueroa v. Immigration and Naturalization Service,* 644 F.2d 1354, 1356 (9th Cir.1981) ("when important aspects of the individual claim are distorted or disregarded, denial of relief is arbitrary").

We believe the BIA abused its discretion in two respects. First, it improperly characterized as mere "economic hardship" Carrete-Michel's claim, which was supported by evidentiary material, that he would be completely unable to find work in Mexico. Although economic hardship by itself cannot be the basis for suspending deportation, *Immigration and Naturalization Service v. Wang,* 450 U.S. at 144, 101 S.Ct. at 1031, we agree with the Ninth Circuit that there is a distinction between economic hardship and complete inability to find work. *Santana-Figueroa,* 644 F.2d at 1356–57. The case at bar, involving a relatively poor, uneducated, unskilled laborer who had been in the United States for eleven years at the time of his first deportation hearing, and who has nine children living in the country, is distinguishable from *Wang,* which concerned an affluent, college-educated alien and his wife who had only been in the United States for four years at the time of their first deportation hearing. We believe the IJ and the BIA should have given more thorough consideration to Carrete-Michel's claim that he would be completely unable to find any work or to support his large family. *See Ramirez-Gonzales v. Immigration and Naturalization Service,* 695 F.2d 1208, 1211–13 (9th Cir.1983) (extreme hardship denied after factual inquiry showed that some employment would be available).

Second, although the BIA properly ruled that it could not consider the effect of deportation on Carrete-Michel's Mexican citizen spouse and nine children, it gave inadequate consideration to the personal and emotional hardship to Carrete-Michel suffered due to the division of his family and his inability to visit his brother and cousins. *Antoine-Dorcelli v. Immigration and Naturalization Service,* 703 F.2d 19, 21; *Mejia-Carrillo v. Immigration and Naturalization Service,* 656 F.2d 520, 522 (9th Cir.1981) ("separation from family alone may establish extreme hardship"); *Bastidas v. Immigration and Naturalization Service,* 609 F.2d 101, 104–05 (3d Cir.1979); *cf. Vergel v. Immigration and Naturalization Service,* 536 F.2d 755, 757 (8th Cir.1976).

We also believe the BIA abused its discretion in determining that even if Carrete-Michel established that he would suffer extreme hardship if deported, suspension of deportation was not warranted because he deceived the government and gave mendacious testimony to the IJ. We believe these issues go to whether Carrete-Michel established "good moral character" under 8 U.S.C. § 1254(a)(1) (1982). Because neither the IJ nor the BIA determined whether Carrete-Michel established "good moral character" we remand for a proper resolution of this issue.

## II. Motion to Reopen

An alien may move to reopen deportation proceedings on the ground that circumstances occurring after the deportation order establish extreme hardship. *Wang,* 450 U.S. at 140–41, 101 S.Ct. at 1029–30. The motion may be granted if a prima facie case of eligibility is established. *Id.* at 141, 101 S.Ct. at 1029.

We review the BIA's denial of a motion to reopen under the abuse of discretion standard. *Id.* at 142, 144–45, 101 S.Ct. at 1031–32; *Rios-Pineda v. Immigration*

*and Naturalization Service,* 720 F.2d 529, 532 (8th Cir.1983). The BIA's failure to consider all relevant factors or to articulate its basis for denial of the motion to reopen is an abuse of discretion. *Batoon v. Immigration and Naturalization Service,* 707 F.2d 399, 401–02 (9th Cir.1983); *cf. Rios-Pineda,* 720 F.2d at 533 n. 3.

Carrete-Michel's motion to reopen presented new evidence[3] that: (1) his son, Raymundo, recently became a permanent resident and thus the BIA should consider the hardship to Raymundo and Carrete-Michel if Carrete-Michel is deported; (2) his other children were adapting well to life in the United States, had done very well in school, were well accepted in the community, and had not spoken Spanish in several years; and (3) economic conditions in Mexico had deteriorated. The BIA summarily rejected Carrete-Michel's motion on the ground that most of the evidence was either not new or it merely supported the assertion of hardship to his non-United States citizen or permanent resident children. The BIA considered the only new evidence to be the allegation concerning the deterioration of economic conditions in Mexico. The BIA indicated that this evidence, even when considered with the existing record, did not establish the prima facie case necessary to justify reopening the case. Finally, the BIA relied on its discretionary denial of the suspension application because of Carrete-Michel's various alleged deceptions.

First, we have already rejected the BIA's reliance on Carrete-Michel's alleged deception as an independent basis for refusing to suspend deportation. We believe it was also an abuse of discretion to rely on this point as an independent basis for denying the motion to reopen. The alleged deception should be considered in the resolution of the "good moral character" requirement of 8 U.S.C. § 1254(a)(1)

(1982). Second, we believe the BIA abused its discretion in failing to consider whether the deportation of Carrete-Michel would result in extreme hardship to his permanent resident son, Raymundo. The BIA also should have considered Carrete-Michel's claim that this new development supported his claim that his deportation would split up his family. Although Raymundo's recent grant of permanent resident status was material new evidence, the BIA did not address this in its decision to deny the motion to reopen. We believe the BIA erred in ignoring this important aspect of the evidence which suggests extreme hardship to Carrete-Michel and his son should Carrete-Michel be deported and his family divided.

The denial of the suspension of deportation and the motion to reopen is reversed and remanded for proper consideration.

---

3. INS regulations at 8 C.F.R. § 3.8 (1984) require that a motion to reopen be supported by affidavit or other evidentiary material which set forth the particular facts claimed to constitute extreme hardship. *Immigration and Naturalization Service v. Wang,* 450 U.S. 139, 141, 101 S.Ct.

1027, 1029, 67 L.Ed.2d 123 (1981). Carrete-Michel supported his petition for suspension of deportation and his motion to reopen with hundreds of pages of affidavits and other evidentiary material.