**Refugio MARQUEZ–MEDINA, Petitioner,**

*v.*

**IMMIGRATION AND NATURALIZATION SERVICE, Respondent.**

No. 84–2397.

United States Court of Appeals, Seventh Circuit.

Argued March 5, 1985.

Decided June 19, 1985.

Susan J. Rogers, Alexander, Fennerty & Fujimoto, Chicago, Ill., for petitioner.

Morris Deutsch, Dept. of Justice, Office of Immigration Litigation, Washington, D.C., and Mary Reed, Washington, D.C., on brief, for respondent.

Before WOOD, POSNER and FLAUM, Circuit Judges.

FLAUM, Circuit Judge.

Petitioner Refugio Marquez-Medina seeks review of the decision of the Board of Immigration Appeals (BIA) denying his motion to reopen deportation proceedings. The BIA, in a per curiam order, summarily affirmed the decision of the immigration judge. The judge determined that Marquez-Medina had failed to demonstrate extreme hardship to himself or his United States citizen child. This Court has jurisdiction under section 106(a) of the Immigration and Nationality Act (Act), 8 U.S.C. § 1105a(a). *See Diaz-Salazar v. INS*, 700 F.2d 1156, 1159 (7th Cir.), *cert. denied*, 462 U.S. 1132, 103 S.Ct. 3112, 77 L.Ed.2d 1367 (1983). We uphold the decision of the BIA.

I.

Marquez-Medina is a fifty-one year old native and citizen of Mexico who entered the United States without inspection in July of 1975.[1] On August 25, 1976, an immigration judge found Marquez-Medina to be deportable due to his entry into the United States without inspection by an immigration officer as required by 8 U.S.C. § 1251(a)(2). In lieu of deportation, the immigration judge granted Marquez-Medina's request for voluntary departure. He overstayed the voluntary departure date and an order of deportation was entered. However, he remained in the United States with indefinite voluntary departure status

---

[1] His first unlawful entry into the United States was in July, 1971. He departed three months later and returned illegally in June, 1974. One year later he departed for one month, and upon his return has remained in the United States continuously.

Marquez-Medina's motion to reopen and accompanying affidavit state that at the time of his apprehension in 1976 he admitted to illegal entry in February of 1976, because he thought it would be in his best interest to do so in his deportation hearing. The immigration judge accepted July 1975 as the true and correct entry date. This finding is not contested on appeal.

until May 7, 1982, pursuant to a restraining order in *Silva v. Levi.*[2]

In July 1982, Marquez-Medina filed a motion to reopen deportation proceedings and for a stay of deportation supported by his affidavit and other documentary evidence. The immigration judge denied the motion to reopen. By per curiam order dated July 17, 1984, the BIA summarily affirmed the immigration judge. Marquez-Medina petitions for review of the BIA decision.

## II.

■ Section 244 of the Immigration and Nationality Act, as amended, 8 U.S.C. § 1254(a), accords the Attorney General discretion to suspend the deportation of otherwise deportable aliens to prevent "extreme hardship." *INS v. Phinpathya,* 464 U.S. 183, 104 S.Ct. 584, 78 L.Ed.2d 401 (1984); *INS v. Wang,* 450 U.S. 139, 101 S.Ct. 1027, 67 L.Ed.2d 123 (1981) (per curiam); *see also Bueno-Carrillo v. Landon,* 682 F.2d 143 (7th Cir.1982). To be eligible for discretionary suspension of deportation, the alien must show: (1) that he has been physically present in the United States for a continuous period of not less than seven years immediately preceding the date of such application; (2) that during all such period, he was and is a person of good moral character and (3) that his deportation would, in the opinion of the Attorney General, result in *extreme hardship* to the alien or his spouse, parent or child who is a citizen of the United States. 8 U.S.C. § 1254(a). The Act does not expressly provide for a motion to reopen, but regulations promulgated under the Act allow such a procedure. Title 8 C.F.R. § 3.2 (1984) provides in pertinent part:

> Motions to reopen in deportation proceedings shall not be granted unless it appears to the Board that evidence sought to be offered is material and was not available and could not have been discovered or presented at the former hearing; nor shall any motion to reopen for the purpose of affording the alien an opportunity to apply for any form of discretionary relief be granted ... unless the relief is sought on the basis of circumstances which have arisen subsequent to the hearing.

The regulations also provide that the motion to reopen shall "state the new facts to be proved at the reopened hearing and shall be supported by affidavits or other evidentiary material." 8 C.F.R. § 3.8(a) (1984). A motion to reopen should only be granted where the petitioner establishes a *prima facie* case of eligibility for the relief requested. *See Wang,* 450 U.S. at 141 101 S.Ct. at 1029; *Diaz-Salazar,* 700 F.2d at 1159. In the present case, neither side disputes that Marquez-Medina has established the first two statutory requirements for suspension of deportation. The issue in this case is whether the BIA abused its discretion in determining that Marquez-Medina had failed to establish "extreme hardship."[3]

Marquez-Medina contends that the immigration judge, upon whom the BIA relied, erred in determining that his deportation will not cause extreme hardship to himself

---

**2.** Petitioner received the benefits of an injunction issued in *Silva v. Levi,* No. 76–C–4268 (N.D. Ill. April 1, 1977) enjoining the INS from deporting any Western Hemisphere alien with an appropriate priority date for the issuance of an immigrant visa. After the pertinent issues in that case were resolved, the district court dissolved the injunction and returned class members to the status they had held earlier. *See generally Silva v. Bell,* 605 F.2d 978 (7th Cir. 1979).

Petitioner claims the immigration judge erred in failing to accord favorable weight to petitioner's membership in the *Silva* class and five-year

presence in the United States pursuant to court order. It is certainly clear that the injunction was not intended to confer any benefit other than postponing deportation.

**3.** Petitioner also urges as a basis for reversal that the BIA failed to articulate any reasons for its decision, thus constituting an abuse of discretion. While a more extensive BIA decision would enhance our review, in this case it is apparent that the BIA agreed entirely with the immigration law judge's decision. The case cited by the petitioner, *Carrete-Michel v. INS,* 749 F.2d 490 (8th Cir.1984), is inapposite.

or his family.[4] Allegedly, economic and emotional hardships to Marquez-Medina, as well as detriment to his citizen child's, Angelica, health and welfare constitute extreme hardship such that his deportation should be precluded. The determination of what constitutes extreme hardship is a task left "in the first instance to the Attorney General." *Wang*, 450 U.S. at 144, 101 S.Ct. at 1031. "The Attorney General and his delegates have the authority to construe 'extreme hardship' narrowly should they deem it wise to do so. Such a narrow interpretation is consistent with the 'extreme hardship' language which itself indicates the exceptional nature of the suspension remedy." *Id.* at 145; *see also Diaz-Salazar*, 700 F.2d at 1159.

█ An examination of the immigration judge's decision reveals that he carefully and cumulatively considered Marquez-Medina's allegations of extreme hardship. Marquez-Medina's argument that his deportation would result in a de facto deportation of his citizen child has been flatly rejected by the courts. Nor can the petitioner benefit from the argument that should he be deported his daughter would be deprived of the other privileges and benefits of United States citizenship. An illegal alien cannot gain a favored status merely by the birth of a citizen child. *See, e.g., Bueno-Carrillo*, 682 F.2d at 146. The citizen child admittedly may face difficulties in adjusting to Mexican life. However, as the judge noted, such difficulties do not materially differ from those encountered by other children who may relocate with their parents, especially at Angelica's young age. *See Diaz-Salazar*, 700 F.2d at 1160. While Marquez-Medina raises Angelica's medical problems to support his claim of hardship, her physician's letter,[5] submitted to the immigration judge, is simply inadequate to establish medical hardship.

There is no indication how serious the problems may be or what treatment is necessary, if indeed the problems are treatable. Moreover, Marquez-Medina presented no evidence that Angelica will not receive adequate treatment in Mexico. On appeal, he makes the conclusory statement that "[h]ealth care is for the most part unavailable in the Marquezes' home town in Mexico and the cost for treatment where available is excessive." Clearly, such a claim is insufficient to constitute extreme hardship even if supported by competent evidence. *See, e.g., Bueno v. INS*, 578 F.Supp. 22, 25 (N.D.Ill.1983) (will consider availability of medical care nationwide).

█ Addressing the issue of economic detriment, the immigration judge noted that Marquez-Medina "has not shown that he suffers from any physical or mental impairment which would restrict his employment or limit the type of employment he could perform in Mexico." Due to his limited education and lack of skills, petitioner asserts that his inability to obtain employment in Mexico will result in extreme economic hardship. It is well settled that economic detriment is a factor for consideration when determining extreme hardship. *See, e.g., Diaz-Salazar*, 700 F.2d at 1160; *Mendoza-Hernandez v. INS*, 664 F.2d 635, 638 (7th Cir.1981). Apparently his unsupported claim relies on general economic conditions in Mexico, not on any condition or circumstance unique to him. As such, the claim is insufficient. The other economic hardships, loss on the sale of his home and the loss of his present employment and its benefits, similarly do not constitute extreme hardship. The record shows he purchased the home, after a deportation order was entered, for $22,000 in 1978 and four years later, in his application for suspension of deportation, he listed the

---

**4.** By the explicit terms of the statute, the hardship to Marquez-Medina's non-citizen family is irrelevant and will not be considered. *Bueno-Carrillo v. Landon*, 682 F.2d 143, 145 n. 2 (7th Cir.1982).

**5.** The physician's letter, dated July 31, 1982, stated in its entirety:

> This is to certify that Angelica Marquez, has been a patient of mine since 5/26/77.
> She is ill with chronic bronchitis. She is thin, anorexic, and in general she is not doing well. She is to be seen by me monthly for the next six months.

value of his real estate assets at $47,000. Additionally, the loss of a job along with its employee benefits does not entail extreme or unique economic hardship. Rather, it is a normal occurrence when an alien is deported. As this court has previously noted, "we do not believe that Congress intended ... to suspend the deportation of all those who will be unable to maintain the standard of living at home which they have managed to achieve in this country." *Bueno-Carrillo*, 682 F.2d at 146.

Finally, petitioner's arguments regarding personal hardship carry little weight. General allegations of emotional hardship caused by severing family and community ties are a common result of deportation. *See, e.g., Wang*, 450 U.S. at 139, 101 S.Ct. at 1029; *Diaz-Salazar*, 700 F.2d at 1156 (requiring special circumstances). Petitioner provided no evidence of participation in community activities although his affidavit states "[m]y family and I have become accustomed to life in the United States...." While his wife and Mexican-born children reside in the United States, none of these family members are lawful permanent residents. Marquez-Medina's three siblings reside in Mexico.

The Eighth Circuit recently found an abuse of discretion in a similar case because the BIA mischaracterized or gave inadequate consideration to an illegal alien's claims constituting extreme hardship. *Carrete-Michel*, 749 F.2d 490. Petitioner contends that the *Carrete-Michel* decision dictates the result in his case. However, his reliance on that decision is misplaced. Carrete-Michel's claim of economic hardship stemming from his inability to find work in Mexico was supported by evidentiary material. Moreover, Carrete-Michel showed personal and emotional hardship as a result of separation from his brother and cousins who were United States citizens. Marquez-Medina failed to show any similar hardships. Carrete-Michel's petition to reopen was based on new evidence—the permanent resident status of his son—which the BIA completely ignored. In contrast, the citizenship status of Marquez-Medina's daughter and the impact of his deportation were fully considered.

### III.

In conclusion, the immigration decision reflects a careful and meaningful examination and resolution of Marquez-Medina's allegations of extreme hardship, both individually and cumulatively. The immigration judge properly determined that he had failed to establish extreme hardship and did not abuse his discretion in denying Marquez-Medina's motion to reopen deportation proceedings. The petition for review of the order of the BIA is hereby

DISMISSED.