900 F.2d 259
 Unpublished Disposition
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
Amne EZZ-EDDINE, Petitioner,
v.
IMMIGRATION AND NATURALIZATION SERVICE, Respondent.
 No. 89-3586.
 United States Court of Appeals, Sixth Circuit.
 April 19, 1990.
 
 Before BOYCE F. MARTIN, Jr. and BOGGS, Circuit Judges, and JOHN W. PECK, Senior Circuit Judge.
 PER CURIAM.
 
 
 1
 Amne Ezz-Eddine appeals the decision of the Board of Immigration Appeals (BIA) denying her petition for asylum, under 8 U.S.C. Sec. 1158(a), and withholding of deportation, under 8 U.S.C. Sec. 1253(h). Finding substantial evidence to support petitioner's claim of a fear of persecution on religious grounds and an abuse of discretion in the BIA's denial of her petition for asylum, we hold that petitioner qualifies for asylum under Sec. 1158(a) and remand for further proceedings.
 
 
 2
 * Petitioner Amne Ezz-Eddine is a 45-year-old native and citizen of Lebanon. She is a Shia Muslim. In April 1984, petitioner entered the United States as a non-immigrant visitor with leave to stay until October 1984. On November 27, 1985, an order to show cause was issued against petitioner, charging her with deportability for non-immigrant overstay under 8 U.S.C. Sec. 1251(a)(2). Petitioner, who requires an interpreter to converse in English, appeared before an immigration judge on February 26, 1986 and conceded that she was deportable, but stated a desire to apply for asylum. An application for asylum is also considered an application for withholding of deportation. A hearing on the asylum petition was held on July 16, 1987. The immigration judge denied petitioner asylum under Sec. 1158(a) and denied a withholding of deportation under Sec. 1253(h). Petitioner filed a timely appeal to the Board of Immigration Appeals. On June 1, 1987, the Board upheld the immigration judge's decision and affirmed the deportation order. Petitioner then appealed to this court, which has jurisdiction over deportation appeals under 8 U.S.C. Sec. 1105a(a).
 
 
 3
 Petitioner testified that she is a Shia Muslim who had lived more than 20 years in a home near Beirut. After 1976, Palestinian militias took control of the area in which she lived. The Palestinians were Sunni Muslims. In 1982, petitioner's water and telephone service was cut off. She went to a Palestinian official to complain. There was a dispute and petitioner threatened to report the Palestinian to the Lebanese police or army. The Palestinian official then threatened her life. After this incident, the home of one of petitioner's Shia neighbors was robbed and the neighbor was killed. Petitioner's own house was robbed. She then moved into a Beirut apartment with her sister and stayed there 20 days, until bombs destroyed the apartment. Petitioner then moved south to another area, where she lived for a year and a half before going to the United States. There is apparently some dispute as to whether this area was in the south of Lebanon, in territory controlled by the Israelis, or simply south of the city of Beirut.
 
 II
 
 4
 Courts have reviewed denials of refugee status under an abuse of discretion standard. Sankar v. I.N.S., 757 F.2d 532 (3d Cir.1985); Sarkis v. Sava, 599 F.Supp. 724 (E.D.N.Y.1984). The Ninth Circuit describes its standard as a two-part review: first, whether there is substantial evidence of a fear of persecution, and second, whether there was an abuse of discretion in the ultimate decision granting or denying asylum. Garcia-Ramos v. I.N.S., 775 F.2d 1370 (9th Cir.1985).
 
 
 5
 Petitioner applied both for refugee status under 8 U.S.C. Sec. 1158(a) and a withholding of deportation under 8 U.S.C. Sec. 1253(h). In order to be eligible for a withholding of deportation, the petitioner must show a "clear probability of persecution" on account of race, religion, or political opinion were he to return to his country. In order to qualify for refugee status, the petitioner must show a "well-founded fear of persecution" on account of race, religion, nationality, membership in a particular social group, or political opinion. 8 U.S.C. Sec. 1101(a)(42). The two standards are not equivalent.[1] I.N.S. v. Cardoza Fonseca, 107 S.Ct. 1207, 1212-13 (1989). A fear of persecution may be "well-founded" even where there is not a "clear probability" of persecution; that is to say, even where the probability of persecution is something less than 50%. We believe that petitioner in this case showed a well-founded fear of persecution on account of religion or membership in a particular social group (Shia Muslim) should she return to Lebanon. The initial cutting off of petitioner's water and telephone service was evidence of persecution on religious grounds. Subsequent to that incident, when petitioner tried to obtain relief from the Palestinian officials who controlled her area, she received a threat against her life. In addition, a fellow member of her religious group was murdered.
 
 
 6
 In rejecting petitioner's claim of a well-founded fear of persecution on religious grounds, the immigration judge and Board of Immigration Appeals placed too great an emphasis on the supposedly personal nature of the confrontation between petitioner and the Palestinian official who threatened her life. In isolation, the incident with the Palestinian official might appear to be based on a personal dispute. However, when viewed in context with the initial termination of petitioner's water and telephone service by Sunni Palestinians, the statement by the Palestinian official assumes the character of a threat of persecution on religious grounds.
 
 
 7
 The immigration judge and the BIA also placed undue emphasis on petitioner's failure to answer a question posed to her by the immigration judge. The judge questioned petitioner about the supposed inconsistency between two of the elements of her story: her statement that she threatened to report the Palestinian official to the Lebanese Army and her statement that the Palestinian Fatah, rather than the Lebanese Army, was in control of the area of Lebanon in which she was living at the time of the termination of her water and telephone services. The judge wanted to know why petitioner would have threatened to report the Palestinian official to Lebanese authorities if she knew that the Lebanese police and Army had no effective authority in her area. Apparently, petitioner did not give a satisfactory answer. The BIA also mentioned this unexplained inconsistency as one of the grounds of its decision to deny petitioner refugee status. Under the circumstances, it is understandable for a person in petitioner's position to make a threat in response to persecution, however limited the effectiveness of such a threat.[2]
 
 
 8
 Moreover, the significance of the alleged inconsistency in petitioner's statements is unclear. If we assume for the sake of argument that petitioner's statements were inconsistent, the only significance the inconsistency would have on the question of whether she showed a well-founded fear of persecution is how it reflected on the credibility of her statements. Yet the I.N.S. does not dispute the factual accuracy of petitioner's statements. Its argument is rather that the threat against petitioner did not constitute clear evidence of persecution on account of religion. Petitioner's credibility is not at issue in this case, and the alleged inconsistency in her statements is therefore irrelevant.
 
 
 9
 The immigration judge stated in his oral opinion that petitioner's claim was "based upon conditions that generally effect [sic] the populous [sic] as a whole" in Lebanon. While it is true that the population of Lebanon suffers generally from the state of war that prevails in much of that country, and that such general suffering cannot form the basis of a well-founded fear of persecution for the purpose of obtaining asylum in the United States, some who suffer generally from the war may also be subject to specific threats because of their religious beliefs. Petitioner's fear of persecution is not based on the general state of war in Lebanon, but rather on specific incidents which indicate a religious-based animus towards her. These incidents are related only incidentally to the general situation in that country, except that, absent the war, the Palestinian groups that threaten her with persecution would not control the area in which she lived.
 
 
 10
 The immigration judge also stated that petitioner's claim must fail because, even if her fears of persecution are well-founded in the geographical area around Beirut, she could still live in Israeli-controlled South Lebanon without fear of persecution. In support of the judge's position, the I.N.S. cites Quintanilla-Ticas v. I.N.S., 783 F.2d 955 (9th Cir.1986), in which the court stated (in a dictum) that a petitioner's fear of persecution was less compelling where the evidence indicated that the danger did not exist outside the petitioner's home town. Quintanilla-Ticas relied on Marquez-Medina v. I.N.S., 765 F.2d 673, 676 (7th Cir.1985), which rejected a claim of extreme hardship because of the lack of adequate medical services in the petitioner's home town, where adequate medical services existed and were available elsewhere in the country.
 
 
 11
 We decline to establish a general rule that asylum cannot be granted to a person who otherwise demonstrates a well-founded fear of persecution in her native country if there is some part of that country in which the fear of persecution is reduced or nonexistent. The statement to that effect in Quintanilla-Ticas did not form part of the holding in that case, and the case from which the underlying principle derived, Marquez-Medina, involved the location of medical services in a country, a very limited circumstance for the principle that the availability of safety or help in one part of a country should be construed as general availability.
 
 III
 
 12
 We thus hold that Ezz-Eddine meets the standard for asylum under 8 U.S.C. Sec. 1158(a) by having shown a well-founded fear of persecution as a Shia Muslim in the event she were to return to Lebanon. We remand for further proceedings consistent with this opinion.
 
 
 
 [1]
 The two statutes also differ in the discretion vested in the Attorney General. While withholding of deportation is mandatory for petitioners who meet the qualifications, the asylum remedy is discretionary. Campos-Guardado v. I.N.S., 809 F.2d 285 (5th Cir.), cert. denied, 108 S.Ct. 92 (1987)
 
 
 [2]
 Even the formidable Owen Glendower appealed to forces whose availability was uncertain:
 Glendower: I can call spirits from the vasty deep.
 Hotspur: Why, so can I, or so can any man; But will they come when you do call for them?
 William Shakespeare, Henry IV, Act III, Scene 1.