Stanislaw **KUCIEMBA**, Petitioner,

v.

**IMMIGRATION AND NATURALIZATION SERVICE,** Respondent.

No. 95–3454.

United States Court of Appeals, Seventh Circuit.

Argued April 23, 1996.

Decided Aug. 7, 1996.

**498**

Arthur A. Liberty (argued), Park Forest, IL, for Petitioner.

Samuel Der–Yeghiayan, I.N.S., Chicago, IL, Richard M. Evans, David M. McConnell, Stephen W. Funk, Dept. of Justice, Civ. Div., Immigration Litigation, Washington, DC, Laura A. Smith (argued), U.S. Dept. of Justice, Immigration Litigation, Washington, DC, for Respondent.

Before FLAUM, MANION and EVANS, Circuit Judges.

MANION, Circuit Judge.

Stanislaw Kuciemba is every mother's dream. He is hardworking, takes good care of his elderly· and infirm relatives, contributes to the community, has an excellent job, and helps run the business where he works. But he is also a Polish national who overstayed his visitor's visa in 1986. He now faces deportation. The immigration judge rejected Kuciemba's application for suspension of deportation under § 244(a) of the Immigration and Nationality Act, 8 U.S.C. § 1254(a), finding that Kuciemba had not established that he would suffer extreme hardship as a result of his deportation. The

Board of Immigration Appeals agreed, and dismissed the appeal. We affirm.

## I. Background

Kuciemba is a 34–year–old native and citizen of Poland, who entered the United States in 1986 on a six-month, non-immigrant visa.[1] He overstayed his visa, and began working as a tool and die maker. He currently is the chief mold maker at Berg Manufacturing & Sales Corporation in Northbrook, Illinois, and trains other employees on the use of the molding machines.

Kuciemba is single and has no immediate family in the United States. His parents and two brothers live in Poland. For the past seven years he has resided in Chicago with his elderly cousins, Nicholas and Julia Pasow. Kuciemba cares for the Pasows, helping them with daily chores and with their medical needs. One of his other relatives in the Chicago area is Carol Falat, a second cousin, who suffers from Down's Syndrome. Kuciemba maintains a close relationship with Carol, visiting her a couple times each month.

In late 1989, the Immigration and Naturalization Service (INS) issued an order to show cause charging Kuciemba with being deportable because he had overstayed his visa. INS initiated deportation proceedings against him. Kuciemba conceded deportability, but applied for suspension of deportation under 8 U.S.C. § 1254(a), and in the alternative, for voluntary departure under 8 U.S.C. § 1254(e).

In July 1994, a deportation hearing was held before an immigration judge. During the hearing, Kuciemba testified as to the extreme hardship he would suffer if he were deported to Poland. He testified that he would be unable to find a job in Poland, that his parents and brothers in Poland did not have the financial resources to support him, and that his separation from the Pasows and Carol would create extreme emotional hardship for him. The immigration judge seemed particularly testy during the hearing, fre-

---

1. Immediately upon entering the United States, Kuciemba applied for political asylum. For several years, no action was taken on the application. Shortly before the deportation hearing be-

gan, however, INS denied the application. No other information regarding the application appears in the record.

quently interrupting and cutting off Kuciemba's testimony. The judge, however, allowed Kuciemba to supplement his testimony with documentary evidence, including letters from his employer, relatives, church officials, Carol Falat's social worker, and records attesting to his employment and education history.

After the hearing, the immigration judge concluded that Kuciemba had not demonstrated "extreme hardship" and was therefore deportable. The immigration judge noted that Kuciemba's alleged hardships were strictly economic in nature and no different than hardships faced by other aliens forced to leave the United States and return to countries with a lower standard of living. The judge also pointed out that although Kuciemba undoubtedly was close to his cousins and was an important employee of his employer, Kuciemba had "not shown that his departure from the United States in spite of these close relationships would amount to the *extreme* hardship required by the statute." The immigration judge thus denied Kuciemba's application for suspension of deportation.

The Board upheld the immigration judge's conclusion that Kuciemba had not shown the extreme hardship necessary to suspend deportation, and dismissed the appeal.

## II. Discussion

The Attorney General is authorized to suspend deportation of any alien who (1) has been physically present in the United States for a minimum of seven years; (2) is of good moral character; and (3) is "a person whose deportation would, in the opinion of the Attorney General, result in extreme hardship to the alien or to his spouse, parent, or child. . . ." 8 U.S.C. § 1254(a)(1). The parties agree that Kuciemba met the first two factors. The only question is whether he has satisfied the "extreme hardship" requirement. We review for abuse of discretion the Board's determination that Kuciemba's deportation would not result in extreme hardship. *Palmer v. INS,* 4 F.3d 482, 487 (7th Cir.1993).

### A. Extreme Hardship

Given the "exceptional" nature of the suspension remedy, the Board has the authority to construe "extreme hardship" narrowly. *INS v. Jong Ha Wang,* 450 U.S. 139, 145, 101 S.Ct. 1027, 1031–32, 67 L.Ed.2d 123 (1981) (per curiam); *Palmer,* 4 F.3d at 487. "Extreme hardship" will not be found without a showing of significant actual or potential injury, in the sense that the petitioner will suffer hardship "substantially different from and more severe than that suffered by the ordinary alien who is deported." *Palmer,* 4 F.3d at 487–88 (citation and internal quotations omitted). Consequently, "[w]hen the potential hardships the alien may encounter are the same faced by an alien to be deported, the 'extreme hardship' standard has not been met." *Cortes–Castillo v. INS,* 997 F.2d 1199, 1204 (7th Cir.1993). Although economic factors are relevant in any analysis of extreme hardship, economic detriment alone is insufficient to support a finding of extreme hardship. *Palmer,* 4 F.3d at 488.

Kuciemba urges us to find that the Board abused its discretion by not considering the hardship he would suffer as a result of being separated from what he refers to loosely as his "exceptionally strong community ties." The ties that Kuciemba accuses the Board of disregarding consist of his relationship with the Pasows and Carol Falat, his employment as a toolmaker, and his active involvement with the church.

### 1. *The Cousins*

Kuciemba first argues that the Board overlooked the extent of his cousins' dependence upon him. The Pasows, he argues, "literally depend on Petitioner to get by from day to day." In support, he points to Nicholas Pasow's assertion that the Pasows would have to sell their home if Kuciemba were not available to take care of normal household chores. Kuciemba adds without elaboration that Carol Falat "would be very hurt if she lost [his] companionship."

In determining extreme hardship, the Board must consider the adverse consequences resulting from the deportation of the alien—both to the alien and to his "spouse, parent, or child." 8 U.S.C. § 1254(a)(1).

Cousins such as the Pasows and Carol Falat, however, are not qualifying relatives under the statute. As the Supreme Court has noted, because "the plain language of the statute [is] so compelling, . . . the Board is not required . . . to consider the hardship to a third party other than a spouse, parent, or child, as defined by the Act." *INS v. Hector,* 479 U.S. 85, 88, 107 S.Ct. 379, 381, 93 L.Ed.2d 326 (1986) (per curiam).

Kuciemba's claim that the Pasows are a mother and father to him is also unavailing. Even if Kuciemba's relationship with the Pasows resembles a parent-child relationship, Congress, through the plain language of the statute, precluded a functional definition for the term "parent." *See id.* at 90, 107 S.Ct. at 382 (because a niece is not a "child" within the meaning of the statute, hardship to petitioner's nieces need not be considered); *see also Dill v. INS,* 773 F.2d 25, 31 (3rd Cir. 1985) (hardship to petitioner's uncle and aunt who were also her de facto parents was not relevant). Congress has neither included cousins in its definition of the term "parent" nor authorized us to adopt a functional definition. Accordingly, the hardship suffered by a cousin is not a relevant consideration for purposes of a § 1254(a)(1) analysis.

■ Kuciemba also argues that he personally would experience emotional hardship if he had to leave his cousins knowing that they would suffer because of his deportation. The Board rejected this argument. The Board acknowledged Kuciemba's strong affection for his cousins, but pointed out that Kuciemba had other compelling family ties in Poland—namely, his parents and his two brothers. We agree with the Board's finding that Kuciemba's separation from his cousins would not constitute extreme hardship, especially since he would be reunited with his immediate family in Poland.

### 2. *Employment*

■ Kuciemba next argues that if he were returned to Poland, he would "face[ ] unemployment, no place to live, no future, his dreams of improving his lot in life gone up in smoke." Returning to Poland, he adds,

would precipitate his "fall from being an important individual to many people, to being virtually a nobody."

■ General economic conditions in an alien's native country will not establish "extreme hardship" in the absence of evidence that the conditions are unique to the alien. *Marquez–Medina v. INS,* 765 F.2d 673, 676 (7th Cir.1985). The Board considered the general conditions in Poland as a factor in its analysis, but recognized that most aliens suffer some form of hardship by being deported from the United States. It is not unusual for deported aliens to be unable to maintain the standard of living in their home country that they have managed to achieve in the United States. *Id.* at 676. The Board pointed out that Kuciemba is young, healthy, and skilled—all factors that should help him find work in his homeland. In addition, the record shows that during the years Kuciemba has worked in this country, he has been able to save $48,000, which should provide a financial cushion to ease any transition into Polish society that he may face.

■ Kuciemba also argues that his deportation would adversely affect his employer's business. He claims that his employer cannot find another toolmaker with his level of expertise to replace him, and warns that his departure would threaten the viability of the business (and correspondingly, the jobs of thirty other coworkers).

Kuciemba by all accounts is a talented toolmaker. Nevertheless, as the Court made clear in *Hector,* § 1254(a)(1) does not require the Board to consider hardship to persons other than those included in the enumerated class. 479 U.S. at 88, 107 S.Ct. at 381. Although the Board may take into account economic detriment in analyzing Kuciemba's claims of extreme hardship, *Palmer,* 4 F.3d at 488, the focus of such an analysis is on the hardship facing Kuciemba, and not his employer or coworkers. If so inclined, Kuciemba's employer may apply for a permanent visa on his behalf. See 8 U.S.C. § 1153(b)(3).[2]

---

**2.** We were informed at oral argument that Kuciemba's employer recently initiated this process

by filing an application for labor certification.

### 3. Community Involvement

■ The remaining element of hardship in this case involves Kuciemba's contributions to what he calls the "American community." This amorphous concept of "community" includes not only Kuciemba's cousins and employer, but also the church groups with whom he volunteers. As evidence of his strong community ties, Kuciemba submitted numerous affidavits from friends, relatives, and church officials, attesting to his solid character and resourcefulness.

Kuciemba's community activities, which the Board found to consist primarily of "helping out" at special church functions, do not alter the extreme hardship analysis. Kuciemba has failed to show how termination of these activities might constitute a hardship to him, as distinct from a hardship to his community. *See Salameda v. INS*, 70 F.3d 447, 449–50 (7th Cir.1995). Moreover, Kuciemba has not shown how the hardship typically encountered by departing aliens differs from the hardship he might suffer from being unable to continue to assist his community. *See Palmer*, 4 F.3d at 488; *CortesCastillo*, 997 F.2d at 1204. The Board acted within its discretion in finding that Kuciemba would not suffer extreme hardship if deported.

### B. Due Process

■ Finally, Kuciemba asserts that his hearing before the immigration judge did not comport with the requirements of due process. He points to two flaws in particular. First, he notes that the judge barred him from testifying about his asylum application and the hardship his cousins would suffer if he were deported.[3] Second, he complains that the judge's frequent interruptions during his testimony created a hostile environment that prejudiced his ability to present his case.

■ We have previously explained that in order to prevail on a due process claim, a petitioner must "produce some concrete evidence indicating that the violation of a procedural protection actually had the *potential* for affecting the outcome of ... deportation proceedings." *Shahandeh–Pey v. INS*, 831 F.2d 1384, 1389 (7th Cir.1987) (citation and internal quotations omitted). Kuciemba has produced no such evidence.

■ A review of the transcript of the hearing shows that the immigration judge did not prevent Kuciemba from fully presenting his extreme hardship claim. Although the immigration judge repeatedly interrupted Kuciemba and restricted his testimony, these interruptions served to focus the hearings on relevant matters. *See Liu v. United States Dep't of Justice*, 13 F.3d 1175, 1177–78 (8th Cir.1994) (immigration judge did not abuse discretion in limiting duplicative testimony on issues of only remote relevance). For instance, the judge refused to hear testimony concerning any possible hardship to Kuciemba's cousins should he be deported. Because his cousins are nonqualifying relatives for purposes of § 1254(a)(1), the immigration judge's decision to bar this testimony was proper. *See Drobny v. INS*, 947 F.2d 241, 245 (7th Cir.1991) (upholding immigra-

No information pertaining to this application appears in the record.

3. The immigration judge cut off the questioning of Kuciemba's lawyer, Jeffrey Kriezelman, at several points during the hearing. The following excerpt is representative of one such exchange:

(Mr. Kriezelman to Kuciemba)
Q: Now, you have a cousin called Carol, is that correct?
A: Yes.
Q: And what is her full name?
(Judge to Mr. Kriezelman)
[Court]: Listen, Mr. Kriezelman, I don't want to hear anything more about cousins or uncles or aunts.
[Kriezelman]: Judge, I think it's a special circumstance and I'd like to—

[Court]: You're overruled.
　　　*　　*　　*　　*　　*　　*
[Kriezelman]: Judge, if I may? [The relationship between Carol and Kuciemba is] a special relationship here and with all due respect to the Court—
[Court]: Mr. Kriezelman, I know what you're trying to do.
　　　*　　*　　*　　*　　*　　*
[Court]: Mr. Kriezelman, you may file an appeal if you deem it advisable. I am going to tell you for the last time, I don't want to hear any testimony about any relatives, etc., etc., other than a mother, father, brother, sister, son or daughter. Now, do you understand English. That's it. Get on with something else. (A.R.67–69.)

tion judge's decision to deny the petitioner's girlfriend from testifying because her relationship with the petitioner did not fall within § 1254(a)(1) considerations). Furthermore, the judge did not err in declining to hear testimony about Kuciemba's asylum application. That is a separate proceeding involving different standards. Also, claims of political persecution have limited probative value in determining "extreme hardship" for purposes of suspension of deportation. *Gebremichael v. INS,* 10 F.3d 28, 40 (1st Cir.1993); *Farzad v. INS,* 802 F.2d 123, 126 (5th Cir.1986); *Kashefi–Zihagh v. INS,* 791 F.2d 708, 710 (9th Cir.1986); *but cf. Blanco v. INS,* 68 F.3d 642, 646 (2d Cir.1995).

Finally, Kuciemba cannot succeed on a due process claim merely by characterizing the immigration judge as cranky. Even if the immigration judge was overly abrupt or intimidating, Kuciemba has "no right not to have [his] feelings hurt by a 'no nonsense' IJ [immigration judge]." *See Ivezaj v. INS,* 84 F.3d 215, 220 (6th Cir.1996). Indeed, by forcing Kuciemba and his attorney to get to the point of their testimony, the immigration judge did no more than exercise his powers to control the pace and scope of the hearing. *Id.* In any event, Kuciemba has failed to show how the immigration judge's frequent interruptions prejudiced the outcome of the proceedings. *See Shahandeh–Pey,* 831 F.2d at 1389. Under these circumstances, Kuciemba was not denied his right to fully present his case.

### III. Conclusion

The Board properly determined that Kuciemba had failed to demonstrate the extreme hardship necessary to suspend deportation. Although we are sympathetic to Kuciemba's plight, we cannot conclude that the Board abused its discretion. Accordingly, the order of the Board is AFFIRMED.