139 F.3d 901
 NOTICE: Seventh Circuit Rule 53(b)(2) states unpublished orders shall not be cited or used as precedent except to support a claim of res judicata, collateral estoppel or law of the case in any federal court within the circuit.
Dinkalem HAILE, Petitioner,
v.
IMMIGRATION AND NATURALIZATION SERVICE and Brian Perryman,
District Director, Respondent.
 No. 96-1781.
 United States Court of Appeals, Seventh Circuit.
 Argued Jan. 28, 1998.
Decided Feb. 17, 1998.
Rehearing and Suggestion for Rehearing En Banc Denied April 15, 1998.
 
 Petition for Review of an Order of the Board of Immigration Appeals. No. Aga-fzy-dwf.
 Before ESCHBACH, MANION, and KANNE, Circuit Judges.
 
 ORDER
 
 1
 Dinkalem Haile petitions for review of the order of the Board of Immigration Appeals ("Board") affirming the denial of her application for asylum. Haile entered the United States in 1992 from Ethiopia and overstayed her visa. She claims that she fears persecution if she were to return to Ethiopia because of her Amhara ethnic identity and the political opinions that have been imputed to her. She argues on appeal that the findings of the Immigration Judge ("IJ") were contrary to the evidence and that the IJ and the Board erred in finding that she did not meet her burden of proving that she had an objectively reasonable fear of future persecution. We deny Haile's petition for review of the Board's order and affirm the Board's decision.
 
 
 2
 At her deportation hearing before the IJ, Haile testified that in Ethiopia she subleased and operated a restaurant. Haile's customers included members of the two communist regimes, the Selassie and the Mengistu regimes, that existed prior to the current government in which the Amharas were the politically and culturally dominant ethnic group. Feleke v. INS, 118 F.3d 594, 596 (8th Cir.1997). Accordingly, Haile developed a reputation for being a supporter of the Mengistu regime.
 
 
 3
 In 1991, the Mengistu regime was overthrown and the Transitional Government of Ethiopia ("TGE") was formed. Haile testified that after the revolution, Haile's landlords, who are of Eritrean ethnic identity and wanted to terminate her lease, made false charges against her, including alleging that she was a party member of the Mengistu regime. Eight days after the TGE came into power, Haile was taken into custody, questioned, and detained for approximately six hours. Several weeks later, Haile again was taken into custody for approximately twelve hours. Haile claimed that her landlords used the false charges against her to have the restaurant lease terminated. Haile's subsequent attempts to open a import/export business were unsuccessful, according to her testimony, because the duties imposed on Amharas were higher than those imposed on other ethnic groups.
 
 
 4
 Haile testified that she fears persecution in Ethiopia because the present government was, and continues to be, unwilling or unable to prevent the killing and persecution of Amharas. According to her testimony, several distant members of her family have been executed in the southern region of Ethiopia. Haile also placed in evidence a warrant for her arrest which notified the area security police that they would be given assistance in executing her if she resisted arrest, but she presented no testimony regarding the document.
 
 
 5
 We will affirm the Board's decision "if it is supported by 'reasonable, substantial, and probative evidence.' " Vaduva v. INS, 131 F.3d 689, 690 (7th Cir.1997) (citing Sivaainkaran v. INS, 972 F.2d 161, 163 (7th Cir.1992)). An alien who is otherwise deportable may be granted asylum in the discretion of the Attorney General and her delegates if the alien qualifies as a "refugee." A "refugee" is an alien who is unwilling or unable to return to his or her home country "because of persecution or a well-founded fear of persecution on account of race, religion, nationality, membership in a particular social group, or political opinion...." 8 U.S.C. § 1101(a)(42)(A). An alien bears the burden of proving that he or she qualifies as a refugee. 8 C.F.R. § 208.13(a); Nenadovic v. INS, 108 F.3d 124, 127 (7th Cir.1997).
 
 
 6
 If an alien can establish that he or she suffered past persecution, a rebuttable presumption is created that the alien has a well-founded fear of future persecution. 8 C.F.R. § 208.13(b)(1)(i); Vaduva, 131 F.3d at 690. Haile testified to only several incidents which could be interpreted as evidence of past persecution: (1) that she was taken into custody and detained during questioning on two occasions; (2) that the current government assisted her landlords in terminating her lease; and (3) that the duties imposed on imported goods were higher for Amharas than other ethnic groups.
 
 
 7
 The Board reasonably concluded that the vast majority of Haile's testimony was not evidence of persecution by the government but involved a personal dispute between Haile and her landlords. "A personal dispute, no matter how nasty, cannot support an alien's claim of asylum." Marquez v. INS, 105 F.3d 374, 380 (7th Cir.1997). The evidence also supports the Board's conclusion that the two brief detentions which Haile suffered in 1991 were the result of the personal dispute and "the general civil strife following the 1991 coup." See Borca v. INS, 77 F.3d 210, 215 (7th Cir.1996) (upholding the Board's conclusion that the incidents of which the applicant complained--"namely being interrogated twice, having her dwelling searched twice, and receiving threatening phone calls--are not sufficiently serious to rise beyond the level of harassment."). Haile's testimony regarding these incidents is not sufficient to establish that "[her] encounters with the government were of such a 'magnitude and frequency' that they would cause a reasonable person to fear being singled out for persecution." Nenadovic, 108 F.3d at 129 (quoting Mitev v. INS, 67 F.3d 1325, 1332 (7th Cir.1995)).
 
 
 8
 Haile also argues that the evidence supported a finding that she suffered economic persecution. "To establish a well-founded fear of economic persecution, [Haile] must show that she faces a probability of deliberate imposition of substantial economic disadvantage on account of her political opinion." Borca, 77 F.3d at 216. At most, Haile was subjected to discrimination when she was forced to pay higher duties on imported goods than members of other ethnic groups. See Bucur v. INS, 109 F.3d 399, 404 (7th Cir.1997) (discriminatory conditions, without more, amount to nothing more than the kind of harassment encountered by minorities everywhere). As this court has held, persecution "must be punishment or the infliction of harm; mere harassment does not amount to persecution." Bradvica v. INS, 128 F.3d 1009, 1012 (7th Cir.1997). The Board therefore reasonably concluded that Haile's experiences in Ethiopia do not rise to the level of persecution.
 
 
 9
 Because Haile failed to show past persecution, she must show a well-founded fear of future persecution to be eligible for asylum. "For a fear of future persecution to support an asylum claim, the fear must be both subjectively real and objectively reasonable." Bradvica, 128 F.3d at 1012.
 
 
 10
 Haile argues that the IJ's decision was arbitrary and capricious because it overlooked the governmental warrant for her arrest. Indeed, the petitioner placed in evidence a court Judgment and Warrant for her arrest and authorizing her summary execution ("if she resists"). However, Haile never mentioned this death warrant in either of her written asylum applications. In fact, Haile never even mentioned the death warrant at her hearing before the IJ. Therefore, it is not surprising that the IJ did not refer to the warrant.
 
 
 11
 Of course, we review the Board's decision, not the IJ's. Marquez, 105 F.3d at 380. Haile first raised the death warrant issue with the Board, and the Board found that the evidence did not support a finding that the Ethiopian government planned to arrest Haile on account of her race, religion, nationality, membership in a particular social group, or political opinion, as required for asylum under 8 U.S.C. § 1101(a)(42)(A). Based upon this finding, it appears that the Board ascribed little weight to the death warrant. Indeed, one would expect an asylum applicant to make much of a governmental warrant for her arrest and execution "if she resists." At the very least, one would expect her to mention a death warrant in an application for asylum or a hearing before an immigration judge. In light of Haile's neglectful treatment of the death warrant issue, we cannot say that this dubious document has undermined the substantial evidence supporting the Board's decision.
 
 
 12
 Haile contends that she was denied due process at her deportation hearing because she was not entitled to complete the presentation of her testimony. "[I]n order to prevail on a due process claim, a petitioner must 'produce some concrete evidence indicating that the violation of a procedural protection actually had the potential for affecting the outcome of ... deportation proceedings.' " Kuciemba v. INS, 92 F.3d 496, 501 (7th Cir.1996) (citation omitted). Haile fails to cite to the record or specify how the IJ cut short her presentation. Neither Haile nor her counsel objected at the hearing to her ability to fully present her case. The IJ asked Haile's counsel on two occasions whether he had additional evidence to present and he stated that he did not. Additionally, Haile fails to argue how the court's interruption of her testimony prejudiced the outcome of the proceedings. Id. at 502.
 
 
 13
 Haile further argues that the 1994 State Department's advisory opinion should not be considered more reliable than the evidence she produced because such opinions often are biased. However, this court recently held that where a State Department report indicates that an individual cannot possess a well-founded fear of persecution, the applicant "had better be able to point to a highly credible independent source of expert knowledge if he wants to contradict the ... Department's evaluation of the likelihood of his being persecuted if he is forced to return home, an evaluation to which courts inevitably give considerable weight." Vaduva, 131 F.3d at 691 (quoting Gramatikov v. INS, 128 F.3d 619, 620 (7th Cir.1997) (finding that a 1993 Amnesty International report and 1992 newsletter were not current and were not relevant to the applicants' claims)). According to the State Department's opinion, an asylum claim based on Amhara ethnic identity "would not be consistent with the country conditions in Ethiopia," and "there is no evidence that the TGE is targeting Amharas for severe mistreatment as a particular ethnic group."
 
 
 14
 The IJ did not err in finding that Haile failed to produce "a highly credible independent source of expert knowledge" to contradict the State Department advisory opinion. Haile presented the Country Reports on Human Rights Practices for 1992 and 1993, as well as numerous articles--the majority of which are dated 1992 or 1993, over one year prior to the advisory opinion. Most of Haile's documentary evidence does not refer to specific discrimination against Amharas but refers generally to ethnic clashes, human rights violations, and unfavorable conditions in Ethiopia. Haile therefore failed to contradict the State Department's specific conclusion that Amharas are not being targeted for mistreatment as a particular ethnic group.
 
 
 15
 Because Haile cannot show an entitlement to asylum, she cannot meet the more stringent burden for withholding of deportation. Bradvica, 129 F.3d at 1014. To be entitlement to withholding of deportation, an alien must show that persecution is "more likely than not." Dobrican v. INS, 77 F.3d 164, 168 (7th Cir.1996). This court has held that " 'anyone who fails the laxer asylum test [is barred] from passing the more stringent deportation-withholding test.' " Iliev v. INS, 127 F.3d 638, 641 (7th Cir.1997) (citation omitted).
 
 
 16
 For the foregoing reasons, we deny Haile's petition for review of the Board's order and affirm the Board's decision.