**Abraham SARKIS and Razmik
Mourad, Petitioners,**

v.

**Charles C. SAVA, District Director of the Immigration and Naturalization Service, Kevin Doyle, Deputy Assistant District Director for Detention and Deportation of the New York District of the Immigration and Naturalization Service, and Any Other Person Having The Said Petitioners In Custody, Respondents.**

**No. 83 CV 2087.**

United States District Court,
E.D. New York.

Dec. 12, 1984.

Edward Costikyan, New York City, of counsel; Paul, Weiss, Rifkin, Wharton & Garrison, New York City, for petitioners.

Raymond J. Dearie, U.S. Atty. for the Eastern Dist. of N.Y., Brooklyn, N.Y., for respondents; Michael DiRaimondo, Asst.

---

U.S. Atty., for the Eastern Dist. of N.Y., Brooklyn, N.Y., of counsel.

## MEMORANDUM AND ORDER

McLAUGHLIN, District Judge.

In this renewed petition for a writ of habeas corpus, Abraham Sarkis and Razmik Mourad challenge the July 17, 1984 decision by the Board of Immigration Appeals (the "Board") denying their application for (1) political asylum under 8 U.S.C. § 1158(a); and (2) temporary withholding of deportation under 8 U.S.C. § 1253(h).

### Background

The factual and procedural background of this case is set forth in this Court's opinion in *Sarkis v. Nelson*, 585 F.Supp. 235 (E.D.N.Y.1984), and does not bear repetition here. Essentially, petitioners are two young Armenian Christians who fear that if they are returned to Iraq they will be persecuted for their refusal to join the military and/or the Baath Party. On January 6, 1984, following three separate hearings which took place over a one and one-half year period, the Board entered a final order of exclusion and deportation. Petitioners filed a petition for a writ of habeas corpus in this Court challenging the Board's decision.

In an Order dated April 12, 1984, this Court remanded the case to the Board for further consideration and for the taking of further testimony. Following a remand hearing held on May 8, 1984, the Board rendered a decision on July 17, 1984, again concluding that petitioners failed to show that they qualify for asylum or for withholding of deportation. Petitioners then filed this renewed petition for a writ of habeas corpus.

### Discussion

#### Asylum

█ To meet their burden of establishing entitlement to asylum, petitioners must, first of all, demonstrate that they are "refugees," *i.e.*, if they are returned to Iraq, they have "a well-founded fear of persecution" for one of the reasons enumerated in 8 U.S.C. § 1101(a)(42)(A). In its July 17, 1984 decision, the Board found that petitioners failed to carry this burden. I agree.

Even if petitioners had demonstrated this fear I could not disturb the Board's denial of asylum. The Supreme Court has noted that "[m]eeting the definition of refugee, however, *does not* entitle the alien to asylum—the decision to grant a particular application rests in the discretion of the Attorney General under § 208(a)." *INS v. Stevic*, —— U.S. ——, 104 S.Ct. 2489, 2497 n. 18, 81 L.Ed.2d 321 (1984).

The Board has made clear that asylum is being denied in its discretion because petitioners fraudulently tried to enter the United States as transit without visa ("TRWOV") aliens. *Cf. Matter of Shirdel*, Interim Decision 2958 (BIA 1984). This fraudulent entry scheme was not essential to the petitioners' flight from Iraq. Indeed, they had already left Iraq and were residing in Greece before they tried to enter the United States. They made no attempt, however, to apply to the United States Embassy in Greece for asylum in the United States or to request asylum from the Greek government. In denying petitioners' request for asylum, the Board concluded that no counterbalancing equities exist to justify petitioners' entry in contravention of normal immigration procedures. I cannot say that the Board's decision constituted an abuse of discretion.

#### Withholding of Deportation

Applications for withholding of deportation are governed by 8 U.S.C. § 1253. The statute directs that the Attorney General *"shall not deport"* an alien to a country "if the alien's life or freedom would be threatened in such country on account of race, religion, nationality, membership in a particular social group, or political opinion." 8 U.S.C. § 1253(h)(1) (emphasis added). Thus, to establish entitlement to withholding of deportation, petitioners must show that if they are deported to Iraq there is a "clear probability" that they will be persecuted for one of the reasons enumerated in

§ 1253(h)(1). *See Stevic,* 104 S.Ct. at 2492. The Supreme Court has construed the "clear probability" standard to require "that an application be supported by evidence establishing that it is *more likely than not* that the alien would be subject to persecution on one of the specified grounds." *Id.* 104 S.Ct. at 2501. (emphasis added).

To carry their burden the petitioners may not rely on evidence of general persecution in their native country. Rather, petitioners must show that they will be "singled out for persecution." *Shamon v. INS,* 735 F.2d 1015, 1017 (6th Cir.1984). *Cf. Kashani v. INS,* 547 F.2d 376, 379 (7th Cir.1977). In a case decided subsequent to *Stevic,* the Sixth Circuit has noted:

> [T]he 'clear probability' test requires at least that an alien show that it is more likely than not that *he as an individual* will be subject to persecution if forced to return to his native land. A 'clear probability' of persecution cannot be proven by the introduction of documentary evidence, not pertaining to the applicant individually, that depicts a general lack of freedom or the probability of human rights abuses in the alien's native land .... Instead, the alien must introduce sufficient credible evidence that supports his individual claim of persecution. Of course, self-serving statements are not enough. A 'clear probability' of persecution is 'more than a matter of [an alien's] own conjecture.' ... In sum, we believe the most reasonable standard is to require that an alien seeking the withholding of deportation ... must advance some credible evidence that authenticates his subjective allegations of persecution.

*Dally v. INS,* 744 F.2d 1191 at 1195–1196 (6th Cir.1984) (citations omitted). Interestingly, both *Shamon* and *Dally* involved the denial of applications for asylum and withholding of deportation sought by Iraqi citizens who feared persecution for their refusal to join the Baath Party.

The Board's denial of petitioners' applications to withhold deportation will be upheld if supported by substantial evidence. *See McMullen v. INS,* 658 F.2d 1312, 1316 (9th Cir.1981). In this Court's April 12, 1984 opinion, I held that the Board's denial was not supported by substantial evidence because the Board had failed to consider certain questions, including (1) whether petitioners' refusal to join the Baath Party constituted a political opinion for which petitioners would be persecuted if returned to Iraq; (2) whether performance of military service would be contrary to petitioners' genuine political, religious or moral convictions, or contrary to valid reasons of conscience; (3) whether the possible infliction of the death penalty upon petitioners would not be religiously or politically motivated; and (4) whether the death by torture of a third Sarkis brother supports petitioners' claim that they will be singled out for persecution. *Sarkis v. Nelson,* 585 F.Supp. 235, 240 (E.D.N.Y.1984). After considering each of these questions in light of all the evidence, including that presented at the new hearing, the Board again concluded in its July 17, 1984 opinion that petitioners have failed to demonstrate a clear probability of persecution sufficient to warrant withholding of deportation.

First, the Board noted that while petitioners' refusal to join the Baath Party constitutes an expression of political opinion, petitioners have failed to demonstrate that they will be subject to persecution because of their failure to join the party, if they return to Iraq. While the Board acknowledged the involvement of the Iraqi Government in acts of persecution against certain individuals because of their political beliefs, the Board noted that petitioners presented no evidence indicating that they would be singled out for persecution. Indeed, the only evidence of acts directed at the petitioners involved acts of harassment by students while petitioners were in school, or shortly thereafter. The Board concluded that petitioners failed to show that "a real threat of recruiting by violence normally occurs in any other contexts." July 17 Board Opinion at 3.

Moreover, the Board noted that petitioners failed to demonstrate, or even to allege,

that military service would be contrary to their political, religious, or moral convictions. Likewise, petitioners failed to demonstrate that the possible imposition of the death penalty would be affected by an improper motive. Petitioners have simply failed to show that discriminatory criminal penalties are imposed on Armenians or Christians.

Finally, the Board examined the evidence regarding the third Sarkis brother's death which occurred in 1974 or 1975. The testimony revealed that no one knows the nature of Nejhdeh Sarkis' death, including whether he was intentionally killed. No member of the Sarkis family left Iraq at the time of the brother's death. Indeed, it was some five or six years after the brother's death before petitioners left Iraq; and neither petitioner cited the brother's death as a reason for leaving Iraq when he applied for political asylum. Accordingly, the Board found the brother's death "too tenuous" to support a finding of clear probability of persecution.

The Board also considered petitioners' claim, raised for the first time at the May 8, 1984 remand hearing, that they belonged to an Armenian health and sport club that was affiliated with the Dashnag Party. Petitioners had previously denied belonging to any organizations or political groups in Iraq. The Board concluded that:

> Counsel for the applicants would have us speculate that all sympathizers, members, or former members of the Dashnag Party or the health club and their families would be in danger of their lives or freedom, if their membership were discovered. On this record, we are unable to come to that conclusion.

July 17 Board Opinion at p. 5.

Upon examining the record in its entirety, I conclude that petitioners have failed to meet their burden of showing that they will more likely than not be persecuted upon their return to Iraq. Accordingly, I find that the Board's decision to deny petitioners' application for withholding of deportation is supported by substantial evidence.

*Conclusion*

The renewed petition for a writ of habeas corpus filed by Abraham Sarkis and Razmik Mourad is denied.

SO ORDERED