**Teresa De Jesus BLANCO, Petitioner,**

v.

**IMMIGRATION AND
NATURALIZATION SERVICE,
Respondent.**

No. 567, Docket 94–4070.

United States Court of Appeals,
Second Circuit.

Argued Dec. 2, 1994.

Decided Oct. 20, 1995.

Anne Pilsbury, Central American Legal Assistance, Brooklyn, N.Y., (Lisa Reiner, of counsel), for Petitioner.

DIOGENES P. KEKATOS, Assistant United States Attorney, New York, N.Y. (Mary Jo White, United States Attorney for the Southern District of New York, and Gabriel W. Gorenstein, Assistant United States Attorney, of counsel), for Respondent.

Lucas Guttentag, American Civil Liberties Union Immigrants' Rights Project, New York, N.Y., James J. Garrett and Lynn M. Haug, Morrison & Foerster, San Francisco, CA, On the Brief, for Amicus Curiae, American Civil Liberties Union.

Before: VAN GRAAFEILAND, MINER, and LEVAL, Circuit Judges.

LEVAL, Circuit Judge:

Petitioner Teresa De Jesus Blanco petitions for review of a February, 1994, decision of the Board of Immigration Appeals ("BIA" or "Board") dismissing her motion to reopen her deportation proceeding to permit her to apply for suspension of deportation. Blanco argues that the BIA abused its discretion in deciding that she had failed to make a prima facie showing of "extreme hardship," a required element under the suspension of deportation statute, 8 U.S.C. § 1254(a)(1). We agree and reverse the order of the BIA.

## I. BACKGROUND

Blanco is a 38–year old native of El Salvador. She fled her country in 1984 during the height of the civil war there and entered the United States illegally. She was apprehended by Immigration and Naturalization Service ("INS") officers, who served her with an Order to Show Cause and Notice of Hearing, charging that she was deportable under 8 U.S.C. § 1251(a)(1)(B) of the Immigration and Nationality Act (the "INA") for having entered the U.S. without inspection.

Blanco conceded her deportability but promptly filed an application for asylum pursuant to Section 208(a) of the INA, 8 U.S.C. § 1158(a). In her written application, she claimed a well-founded fear of persecution on the grounds that the Salvadoran military and rebel guerrillas sought to impress persons of her age into their ranks, and that her uncle was killed after refusing to join the rebel movement. Blanco also asserted that she would be a target of retribution upon her return, as the Salvadoran government would consider her subversive for having fled the country.

Before this application was fully processed, Blanco voluntarily returned to El Salvador in November, 1985, shortly after the election of José Napoleon Duarte as President. She states that she returned to El Salvador in the expectation that conditions had improved under the new democratic regime. However, she shortly fled again to the United States with her children, after finding that the political situation there remained unstable and threatening.

In September, 1986, the INS served Blanco with an Order to Show Cause and Notice of Hearing, again charging her with deportability under the INA for entry without inspection. At her deportation hearing in 1987, she testified in support of her applications for asylum and withholding of deportation. Her evidence included testimony about the killing of her father and common-law husband,[1] and the politically-motivated murders of her uncle and of a close neighbor. Immigration Judge ("IJ") Patricia Rohan rendered an oral decision at the close of the hearing denying Blanco's applications.

While Blanco's appeal of this decision was pending before the BIA, a class action settlement was reached in *American Baptist Churches v. Thornburgh,* 760 F.Supp. 796 (N.D.Cal.1991) ("*ABC*"), among various government agencies (including the INS) and a plaintiff class of Salvadorans and Guatemalans who had fled their countries. The suit alleged that the United States government

---

1. In the transcript of her 1987 deportation hearing, Blanco states that her husband was killed in an automobile accident. She claims this was a mistranslation, and that in fact her husband was killed in cross-fire between the military and guerrillas.

had politicized its asylum policy by discriminatorily denying refugee status to persons fleeing repressive regimes supported by the United States.

The *ABC* settlement, entered in January, 1991, stipulated that the INS would give *de novo*, unappealable hearings (conducted before specially-trained asylum officers, *see* 8 C.F.R. §§ 208.1(b) and 208.9 (1995)) to most Salvadoran and Guatemalan asylum applicants who were present in the United States as of September 19, 1990 (Salvadorans), or October 1, 1990 (Guatemalans). *ABC,* 760 F.Supp. at 799–800. This right extended to all those who had previously been denied asylum, as well as those who had not yet filed for asylum or whose cases were still pending. *Id.* at 800. The settlement required the INS in the meantime to stay deportation proceedings against class members. *Id.* at 805. Because Blanco fell within the class of Salvadorans eligible for such hearings, the INS stayed her deportation and closed her administrative proceedings pending a *de novo* adjudication of her asylum claim.

During the stay of her deportation under the *ABC* settlement, Blanco has continued to live and work in the United States. In time, she accumulated seven years of continuous residency in this country, making her theoretically eligible for suspension of deportation under 8 U.S.C. § 1254(a)(1), a separate remedy wholly independent of asylum. Notwithstanding the stay of her asylum proceedings, in 1993 Blanco asked the BIA to reopen and remand her case to an IJ for a hearing on suspension of deportation.[2]

**2.** Although the *ABC* settlement entitles class members to an administrative reopening of their asylum claim only, it does not preclude them from seeking reopening for alternative forms of relief, such as a suspension of deportation. *ABC,* 760 F.Supp. at 811.

**3.** The statute provides that:

(a) ... the Attorney General may, in his discretion, suspend deportation and adjust the status to that of an alien lawfully admitted for permanent residence, in the case of an alien ... who applies to the Attorney General for suspension of deportation and—
(1) is deportable under any law of the United States except the provisions specified in paragraph (2) of this subsection; has been physical-

In a decision dated February 16, 1994, the BIA rendered a decision on multiple issues, most of which were not properly before it. Among those rulings, it rejected Blanco's motion to reopen and remand for a suspension hearing, finding that she had failed to establish a prima facie showing that her deportation would cause extreme hardship, and thus was ineligible for suspension. Blanco then brought this petition for review.

## II. DISCUSSION

Section 244(a)(1) of the INA, codified at 8 U.S.C. § 1254(a)(1), the statutory provision governing suspension of deportation, authorizes the Attorney General to grant permanent residence to an otherwise deportable alien who: (1) has been continuously present in the United States for seven years preceding the date of the application; (2) has exhibited good moral character during that time; and (3) whose deportation would, "in the opinion of the Attorney General," cause "extreme hardship" to the alien or to her citizen or lawfully resident spouse, parent or child. 8 U.S.C. § 1254(a)(1).[3] Suspension of deportation is a remedy that has been likened to "administrative grace." *United States ex rel. Hintopoulos v. Shaughnessy,* 353 U.S. 72, 77, 77 S.Ct. 618, 621, 1 L.Ed.2d 652 (1957). The burden rests with the applicant to establish not only that she meets the criteria for suspension, but also that she merits the relief as a matter of discretion. 8 C.F.R. § 242.17(e) (1994). The Attorney General has broad discretionary power to deny this relief, notwithstanding a petitioner's showing of statutory eligibility.[4]

ly present in the United States for a continuous period of not less than seven years immediately preceding the date of such application, and proves that during all of such period he was and is a person of good moral character; and is a person whose deportation would, in the opinion of the Attorney General, result in extreme hardship to the alien or to his spouse, parent, or child, who is a citizen of the United States or an alien lawfully admitted for permanent residence.
8 U.S.C. § 1254(a)(1).

**4.** Furthermore, motions to reopen deportation proceedings, like petitions for rehearing or motions for new trial, are heavily disfavored; denials of reopening are reviewed only for abuse of discretion. *INS v. Doherty,* 502 U.S. 314, 321–

*Hintopoulos,* 353 U.S. at 77, 77 S.Ct. at 621. The authority of the Attorney General in this regard has been delegated to the BIA. 8 C.F.R. §§ 3.0–3.1 (1995).

■ Notwithstanding the broad discretion afforded to the Board in ruling on applications of this nature, we have no difficulty finding on this record that the agency abused that discretion. Its ruling is a compendium of errors. The Board misperceived the nature of the relief being sought. It ruled on issues that were not before it. To the extent it ruled on the issue that was before it, the Board ignored the principal evidence advanced by the petitioner. Finally, it issued a ruling beyond its power that nullified petitioner's rights under the *ABC* agreement.

Blanco's motion sought to reopen her deportation case for the sole purpose of permitting her to present her case for suspension of deportation under § 1254(a)(1) to an immigration judge. The Board nonetheless erroneously asserted that petitioner had requested reinstatement of her appeal from the earlier denial of asylum and of withholding of deportation. Although Blanco's papers did not discuss the issues arising from the previous denial of asylum and withholding, the principal focus of the Board's opinion is on these claims that were not before it.

Blanco's application for a hearing on suspension attempted to establish "extreme hardship" in major part by recounting incidents of violence that have been and would be directed at her in El Salvador. Her affidavit in support recounted the killing of her common-law husband, her father, and her uncle; the murder of a neighbor; threats against her by guerrillas; injury to her child

from a bomb blast outside her home; and child kidnapping from a school attended by one of her children. This evidence was relevant to a claim of hardship more personally directed and more severe than the claim that might be made by any deportee to such a strife-torn nation. But in discussing her failure to establish hardship, the BIA mentions none of this evidence. It speaks only of its view that her separation from relatives and relinquishment of property and economic resources in the United States would not entail extreme hardship. The BIA thus reached its conclusion by ignoring the most salient portions of her application.

■ The Board was clearly aware of Blanco's claims of vulnerability to violence in El Salvador; it discussed these in the earlier part of its opinion which purported to affirm the denial of asylum. However, that discussion is limited to noting Blanco's failure to show that this violence was politically motivated, a point which, although relevant to the issue of asylum [5] (which, as noted, was not properly before the Board), is wholly irrelevant to the application for suspension. To make a prima facie case for suspension, an otherwise eligible alien needs to show only "extreme hardship"; there is no requirement to show that it results from political persecution. *See* 8 U.S.C. § 1254(a)(1). Thus, violence and threats that fail to establish the political, religious, or ethnic motivation necessary for asylum may nonetheless be probative of extreme hardship qualifying for suspension of deportation.

Finally, the Board concluded its opinion by ordering Blanco to depart the United States voluntarily within 30 days or face deportation. This order was issued in clear deroga-

---

22, 112 S.Ct. 719, 724–25, 116 L.Ed.2d 823 (1992). The rationale behind this policy in the immigration context is to avoid delay and abuse of the process by aliens who, through dilatory tactics or outright evasion of deportation, are able to produce new and material equities (such as years of residency, a resident spouse or native-born children) sufficient to establish a *prima facie* case for relief from deportation. *INS v. Abudu,* 485 U.S. 94, 107, 108 S.Ct. 904, 913, 99 L.Ed.2d 90 (1988); *INS v. Jong Ha Wang,* 450 U.S. 139, 143–44 n. 5, 101 S.Ct. 1027, 1030 n. 5, 67 L.Ed.2d 123 (1981). Blanco nonetheless argues that the abuse of discretion standard is inappropriate in this case because, her deporta-

tion having been stayed indefinitely as a result of the *ABC* settlement, her application to reopen for a suspension hearing would cause no delay, evasion, or abuse of process. We need not resolve this question, because we find clear abuse of discretion by the BIA in ruling on Blanco's motion.

5. In order to be eligible for asylum or withholding of deportation, an applicant must show a well-founded fear or threat of persecution on account of political opinion, race, religion, nationality, or membership in a particular social group. *See* 8 U.S.C. §§ 1101(a)(42)(A) and 1253(h).

tion of Blanco's rights under the *ABC* settlement, which entitled her to a stay of deportation proceedings pending a new hearing on the asylum claim. *See ABC,* 760 F.Supp. at 805.

■ While the BIA possesses broad discretion to rule on claims for suspension of deportation based on hardship, *see INS v. Jong Ha Wang,* 450 U.S. 139, 145, 101 S.Ct. 1027, 1031–32, 67 L.Ed.2d 123 (1981), that discretion is not unlimited. It must at a minimum be grounded on the facts that pertain to the applicant's case. *See Mattis v. INS,* 774 F.2d 965, 967 (9th Cir.1985) (failure to address all factors relevant to claim of hardship is abuse of discretion); *Dhine v. Slattery,* 3 F.3d 613, 619 (2d Cir.1993) (in reviewing for abuse of discretion, appellate courts must examine whether INS considered appropriate factors); *Anderson v. McElroy,* 953 F.2d 803, 806 (2d Cir.1992) (INS abused discretion in failing to consider "record as a whole" in evaluating motion to reopen and stay deportation). Furthermore, the BIA's ruling on Blanco's application was not based on its discretion to deny suspension, notwithstanding the applicant's eligibility. Rather, it was based on a finding of ineligibility resulting from failure to show extreme hardship. That finding, as noted above, was based on a failure to consider the record placed before it. The Board's ruling was an abuse of discretion.

■ The evidence adduced by Blanco in support of her petition was a wholly sufficient prima facie showing of extreme hardship, as well as of the other elements necessary to establish eligibility for suspension. Furthermore, the concerns about abuse of process which normally prejudice motions to reopen do not apply to the circumstances of this case. First, Blanco's request for a suspension hearing was not untimely. She was

ineligible for suspension under § 1254 at the time of her original deportation hearing, having not been domiciled in the United States for seven years. Blanco applied for suspension at the first available opportunity, in 1993.[6] Second, there is no indication that Blanco has manipulated her proceedings or evaded deportation in order to achieve this residency. *See INS v. Rios Pineda,* 471 U.S. 444, 450, 105 S.Ct. 2098, 2102–03, 85 L.Ed.2d 452 (1985) (disfavoring legal maneuvers designed to delay deportation). By contrast, Blanco accrued her years of residence in the United States while her timely appeals were either pending or administratively closed by the government under the terms of the *ABC* settlement. She has never violated a final order of deportation. Third, she is distinguishable from most movants for reopening in that the processing of her application for suspension will not delay her deportation or other resolution of her immigration status. Unlike many petitioners who wait until the virtual eve of deportation to file for a new form of relief, *compare Acevedo v. INS,* 538 F.2d 918, 919 (2d Cir.1976), Blanco's deportation proceedings have been held in abeyance pending readjudication of asylum under *ABC.* At the time of her application, the INS had shown no signs of readiness to grant the hearings required by the *ABC* settlement.

## III. CONCLUSION

We thus conclude that: (1) the Board's dismissal of Blanco's application without a hearing was an abuse of discretion; (2) her application showed prima facie eligibility for relief from deportation under 8 U.S.C. § 1254(a)(1); and (3) the circumstances that ordinarily disfavor reopenings for new hearings are not present. Upon all these considerations, we conclude that Blanco is entitled

**6.** We note also that Blanco's motion was not a request to reopen for the purpose of hearing anew a previously adjudicated claim, but an application for a completely different remedy unavailable to her at the time of her deportation hearing. This circumstance favors her motion to reopen. *See* 8 C.F.R. § 3.2 (1994) (barring reopening where right to apply for underlying remedy was explained and available to alien at former hearing, unless new claim for relief "is

sought on the basis of circumstances which have arisen subsequent to the hearing"); *see also INS v. Doherty,* 502 U.S. 314, 329–30, 112 S.Ct. 719, 728, 116 L.Ed.2d 823 (1992) (Scalia, J., concurring in the judgment in part and dissenting in part) (more generous treatment appropriate when motion to reopen is analogous to a "remand for further proceedings," as opposed to readjudication of previously heard claims).

to a hearing before an immigration judge on her application for suspension of deportation.

Reversed and remanded for proceedings consistent with this opinion.

VAN GRAAFEILAND, *Circuit Judge*, concurring separately:

I concur in the result reached by my colleagues, but I do so with reservations. In the first place, I depart from my colleagues' description of the Board's ruling as a "compendium of errors." The Board considered Blanco's claim of hardship as it related to her application for suspension of deportation and rejected it. This was not a "compendium of errors."

Secondly, I am concerned about the precedential effect of my colleagues' treatment of generalized violence as the equivalent of "extreme hardship." Civil unrest and generalized violence are conditions endemic to much of Central America. They do not justify a claim of extreme hardship by every reluctant deportee to one of these countries. Before Blanco can qualify for suspension from deportation, she must establish that her hardship would be different and more severe than would that of other illegal aliens returned to the same milieu. *See INS v. Jong Ha Wang*, 450 U.S. 139, 145, 101 S.Ct. 1027, 1031–32, 67 L.Ed.2d 123 (1981). *See also Vargas v. INS*, 826 F.2d 1394, 1397 (5th Cir.1987); *Marquez–Medina*, 765 F.2d 673, 676–77 (7th Cir. 1985). This is not what Blanco claimed or proved. Indeed, in the motion to reopen Blanco's case and provide her a suspension of deportation hearing, her counsel, quoting Senator DeConcini stated that Mrs. Blanco and her children "like thousands of other Salvadorans, 'have been the innocent victims of war, random violence, and civil strife in their homeland.' " Moreover, in the decision of the Board of Immigration Appeals, the Board stated that Mrs. Blanco was "fleeing general conditions of violence" and that "at no time has [she] been directly or indirectly threatened or harmed by anyone in El Salvador on account of her political opinion, nor has she established a pattern or practice of persecution of groups of persons situated similarly to [her]." We are required to give substantial deference to the Board's findings of fact. If they are supported by reasonable, substantial and probative evidence on the record considered as a whole, they are conclusive. *Maikovskis v. INS*, 773 F.2d 435, 446 (2d Cir.1995); *Sarkis v. Sava*, 599 F.Supp. 724, 726 (E.D.N.Y.1984).

I am content with my colleagues' finding of extreme hardship but not on the ground that her exposure to violence was more severe than that of other Salvadoran refugees.