**Hao JIANG, a/k/a Hao Zhang, Petitioner,**

v.

**IMMIGRATION AND NATURALIZATION SERVICE, Respondent.**

No. 03–4519.

United States Court of Appeals, Second Circuit.

Dec. 23, 2004.

Tao Lin, Caesar & Napoli, Attorneys at Law, New York, N.Y. (on submission), for Petitioner.

Judd C. Lawler, for David N. Kelley, United States Attorney for the Southern District of New York (Kathy S. Marks, Assistant United States Attorney), New York, N.Y. (on submission), for Respondent, of counsel.

PRESENT: MESKILL, CALABRESI, and WESLEY, Circuit Judges.

SUMMARY ORDER

Hao Jiang ("Jiang"), a native and citizen of the People's Republic of China, arrived in the United States on April 18, 1994, and

was placed in exclusion proceedings. Jiang conceded excludability, but sought asylum and withholding of deportation on the basis of alleged persecution on the basis of his religion. The Immigration Judge ("IJ") rejected Jiang's account of his persecution as not credible, a finding that was affirmed on appeal by the Board of Immigration Appeals (the "BIA" or "Board"). Jiang did not seek judicial review of the BIA's exclusion order, but also was not removed from the country by the INS. He continued to live in the United States, and subsequently married and had two children (in 2000 and 2001, respectively).

In September 2002, nearly six years after the dismissal of his appeal, Jiang moved to reopen his exclusion proceedings. Jiang alleged that country conditions in China had changed since the time his exclusion proceedings were last before the Board, and that he should not, therefore, be subject to the time limits that ordinarily apply to motions to reopen before the BIA. *See* 8 C.F.R. § 1003.2(c)(3)(ii). In support of his arguments, Jiang introduced the text of China's first national family planning law, passed by the National People's Congress in December 2001. Jiang also introduced the congressional testimony of a China expert, John Aird, on the purpose and likely effects of the 2001 law.

Jiang further argued in his motion that he possessed a well-founded fear of persecution in China and that he was thus prima facie eligible for asylum. Specifically, he alleged that he and his wife would be considered birth control violators in China, because they had not obeyed the "one child" rule that applies to most Chinese citizens. Jiang asserted (and presented evidence to the effect) that he or his wife would, as a result of their violations of China's birth control policy, be sterilized were they to return to China. Additional-

ly, Jiang presented evidence in support of his claim that the newly enacted family planning law was intended to lead to more stringent enforcement of birth control laws in China, and would, therefore, increase the likelihood of Jiang and his wife being penalized upon their return.

On February 25, 2003, the BIA rejected Jiang's motion to reopen, finding that it was untimely. After addressing the changes in Jiang's personal circumstances that had occurred since the time his proceedings were last before the Board, the Board observed that Jiang's "motion [wa]s more than 6 years late." The Board concluded that "[u]nder these circumstances" Jiang's motion should not "qualify for the exception pursuant to 8 C.F.R. § [100]3.2(c)(3)(ii)." The Board did not specifically address Jiang's claim that country conditions in China had changed for birth control violators, and also did not mention any of the evidence introduced by Jiang in support of that argument. Jiang filed a timely petition for review by our court.

The Board of Immigration Appeals has broad discretion to grant or deny an alien's motion to reopen. *See INS v. Doherty,* 502 U.S. 314, 323, 112 S.Ct. 719, 116 L.Ed.2d 823 (1992). The role of our court in reviewing the Board's determinations on such motions is therefore necessarily circumscribed. Despite the narrow scope of our review, we have not, in the past, hesitated to conclude that the BIA has abused its discretion where it has failed to articulate a reasoned basis for rejecting an alien's motion to reopen. *See, e.g., Ke Zhen Zhao v. DOJ,* 265 F.3d 83, 97 (2d Cir.2001); *see also Anderson v. McElroy,* 953 F.2d 803, 806 (2d Cir.1992) (finding that the BIA abused its discretion in denying a stay of deportation, where its order summarily denied the alien relief, without clarifying the Board's reasoning). Our

court has also, on numerous occasions, found that the Board's failure to address material evidence introduced by an alien constitutes an abuse of its reopening authority. *See, e.g., Blanco v. INS,* 68 F.3d 642, 646–47 (2d Cir.1995); *Romero–Morales v. INS,* 25 F.3d 125, 129 (2d Cir.1994); *see also Zhao,* 265 F.3d at 97 (finding that the Board erred in failing to consider the "record as a whole"); *Chen v. INS,* 359 F.3d 121, 129 (2d Cir.2004) (in an asylum case, concluding that substantial evidence review was impossible where the BIA and IJ had failed to consider a key aspect of the alien's testimony).

■ While we have not required the BIA to compose a lengthy exegesis in support of its decisionmaking, the Board must at a minimum provide a sufficient basis for a reviewing court to discern the Board's reasons for declining to afford an alien relief. *See, e.g. Anderson,* 953 F.2d at 806; *see also SEC v. Chenery Corp.,* 332 U.S. 194, 196, 67 S.Ct. 1575, 91 L.Ed. 1995 .(1947) (noting, as a general principle of judicial review of administrative decision making that the "basis [on which the agency action rests] must be set forth with such clarity as to be understandable"). Applying that standard here, we conclude that the Board has manifestly failed in its obligations to delineate its basis for denying Jiang's motion.

Despite the Board's acknowledgment that Jiang claimed an exemption from the motion to reopen time limitations, under the exception for changed country condi-

tions, the Board did not address the critical question of whether country conditions in China had indeed changed.[1] Given the Board's failure to do so, there is no logical basis on which our court can review the Board's determination that Jiang's motion should be denied. *See generally Anderson,* 953 F.2d at 806 (noting that we are constrained, in reviewing the BIA's exercise of discretion, to the "basis articulated in the [Board's] decision") (internal quotation marks omitted). It is meaningless to conduct substantial evidence review of a factual determination (such as whether country conditions have changed), where, as here, it is does not appear that such a determination has been made.

■ We are also independently compelled to vacate and remand by the Board's apparent failure to give any consideration to the evidence submitted by Jiang in support of his contention that country conditions in China have changed. As our court has frequently held, the BIA is required to review the "record as a whole" in ruling on a motion to reopen. *See, e.g., Zhao,* 265 F.3d at 97; *Blanco,* 68 F.3d at 647. While we may, in some cases, afford the Board leeway in the detail with which it addresses an alien's factual contentions, *see Guan Shan Liao v. DOJ,* 293 F.3d 61, 68 (2d Cir.2002), and have found that "very marginal" evidence need not be explicitly referenced by the Board, *Douglas v. INS,* 28 F.3d 241, 244 (2d Cir.1994), we cannot affirm a decision that has utterly failed to account for critical record evi-

---

1. In his appellate brief, Jiang has argued that, notwithstanding the existence of changed country conditions, his changed personal circumstances (arising in this country) constituted an adequate basis for reopening under 8 C.F.R. § 1003.2(c)(3)(ii). This argument is foreclosed by our decision in *Guan v. BIA,* 345 F.3d 47, 49 (2d Cir.2003) (per curiam). Contrary to the government's assertions, however, this changed personal circumstances ar-

gument was not the thrust of Jiang's argument before the BIA. We decline to base our appellate decision on what we believe to be a mischaracterization of the record that was before the BIA. There is, moreover, no suggestion that Jiang has, on appeal, abandoned his BIA argument that his proceedings should be reopened because of changed country conditions.

dence. *See, e.g., Blanco,* 68 F.3d at 647; *see also Jin Shui Qiu v. Aschroft,* 329 F.3d 140, 149 (2d Cir.2003).

In the case before us, this rule mandates that we vacate and remand the Board's order. The BIA's order gives no indication that the Board was aware of—much less that it had considered—petitioner Jiang's evidence of changed country conditions. That evidence was not by any means "marginal," *Douglas,* 28 F.3d at 244—on the contrary, it formed the very crux of Jiang's reopening arguments. Whether or not such evidence—had it been considered—would have been sufficiently substantial to persuade the Board of Jiang's contentions, the evidence—under our precedents—was clearly not "too insignificant to merit discussion." [2] *Qiu,* 329 F.3d at 149 (internal quotation marks omitted). The Board's failure to consider this evidence thus constituted a clear abuse of discretion.

We conclude by noting our concern at the BIA's apparent abdication of its adjudicative responsibilities in this case.[3] As at least one of our sister circuits has observed (in even stronger terms), such poorly founded BIA decisionmaking appears to have become all too common. *See, e.g., Yi–Tu Lian v. Ashcroft,* 379 F.3d 457, 461 (7th Cir.2004); *Niam v. Ashcroft,* 354 F.3d 652, 654 (7th Cir.2004). While we sympathize with the Board's overwhelming caseload and the complexity of the issues that come before it, in relatively uncomplicated cases such as this, there is no justification for the Board's failure to address adequately the petitioner's claims. *Cf. Guchshenkov v. Ashcroft,* 366 F.3d 554, 560 (7th Cir.2004) (articulating a similar sentiment). It is a waste of both judicial and administrative resources for a case like this to return to the BIA (and possibly, once again to us on appeal) because of the Board's failure to consider the evidence before it and respond to that evidence in a reasoned fashion.

We have considered all of the respondent's arguments and find them to be

---

2. The evidence of changed country conditions submitted by Jiang in conjunction with his motion to reopen included:

   1) An unofficial translation of the Population and Family Planning Law ("PFPL") passed by the national government of China in 2001;

   2) Congressional testimony from China expert John Aird about the purpose and likely effects of the 2001 law;

   3) Jiang's own affidavit attesting to the fact that his relatives in China had warned him of deteriorating conditions and tightened enforcement of the family planning laws since the PFPL became effective in 2002;

   4) A letter from Jiang's father-in-law, indicating that local officials and media propaganda indicated that the PFPL was to be implemented aggressively, and that birth control violators like Jiang would be imprisoned in accordance with the law.

Jiang also introduced evidence that, despite the fact that his violations of the birth control policy took place in the United States, he would likely be subject to harsh measures such as sterilization upon his return to China.

In contrast, the evidence before the Board at the time of Jiang's original hearing indicated that Chinese couples who had "extra" children abroad were given "at most ... modest fines."

3. While not directly relevant to our holding, we note that the Board mischaracterized the factual record in Jiang's case in certain significant respects. For example, the Board characterized Jiang as having one child, born on August 20, 2001, while the birth certificates in evidence indicate that Jiang has both a son, born on December 9, 2001, and a daughter, born October 19, 2000. The Board also stated that the deadline for filing a timely motion to reopen would have been *September 30, 1996,* despite the fact that Jiang's case remained pending before the Board until *November 21, 1996.* While Jiang has not argued that these factual errors warrant reversal of the Board's decision, they are indicative of the lack of care taken by the Board in this case.

without merit. The petition for review of the BIA's decision is therefore GRANTED, and the BIA's order is VACATED and REMANDED for further proceedings consistent with this order.