

2005 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

4-4-2005

# Han v. Atty Gen USA

Precedential or Non-Precedential: Non-Precedential

Docket No. 04-1444

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2005

Recommended Citation

"Han v. Atty Gen USA" (2005). *2005 Decisions.* Paper 1399.
http://digitalcommons.law.villanova.edu/thirdcircuit_2005/1399

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova University School of Law Digital Repository. It has been accepted for inclusion in 2005 Decisions by an authorized administrator of Villanova University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

No. 04-1444

DONG MYUNG HAN; EUN MI HAN;
LEETO HAN; LEEMO HAN,
Petitioners

v.

ATTORNEY GENERAL OF THE
UNITED STATES; BUREAU OF CITIZENSHIP AND
IMMIGRATION SERVICES,
Respondents

On Petition for Review of Orders of the
Immigration and Naturalization Service
Board of Immigration Appeals
(BIA Nos. A76-141-596, A76-141-597,
A77-734-709 and A77-734-707)

Submitted Under Third Circuit LAR 34.1(a)
March 10, 2005

Before: NYGAARD, McKEE AND RENDELL, Circuit Judges.

(Filed: April 4, 2005)

OPINION OF THE COURT

RENDELL, Circuit Judge.

Appellants petition for review of a decision by the Board of Immigration Appeals

("BIA") affirming the Immigration Judge's ("IJ") denial of their motion to reopen proceedings based on ineffective assistance of counsel. We have jurisdiction under 8 U.S.C. § 1252. For the reasons that follow, we will deny the petition.

## I. Factual and Procedural Background

As we write solely for the parties, our recitation of the facts will be limited to those necessary to our determination. Petitioners Dong Myung Han and Eun Mi Han are natives of South Korea who were granted landed immigrant status in Canada as of June 6, 1981. Subsequently, the Hans and their two children[1] were admitted to the United States at Niagra Falls, New York as non-immigrant visitors authorized to remain for a temporary period of time. The Hans remained in the United States past the expiration of the temporary period, and the Immigration and Naturalization Service ("INS") commenced removal proceedings.

According to an INS investigatory memo dated September 5, 2000, Notices to Appear were mailed to the Hans' "attorney of record, John Hykel" (AR220) on or around that date. And, on October 10, 2000, in a submission to the Immigration Court entitled "Written Pleading," Mr. Hykel stated that Mr. and Mrs. Han, through counsel, conceded proper service of such Notices to Appear. (AR145.) While serving as counsel for the Hans, Mr. Hykel moved for, and was granted, several continuances before the IJ.

The Hans do not dispute the fact of Mr. Hykel's representation but allege that Mr.

---

[1]Both of the Han children are Canadian citizens by birth.

2

Hykel was hired to pursue green cards and more specifically, to file an Application for Alien Employment Certification based upon an offer Mr. Han had received for employment in the United States.[2] (AR129.) Mr. Hykel did submit such an application on behalf of Mr. Han in October of 2000. Thereafter, on January 24, 2001, the New Jersey Department of Labor ("DOL") informed Mr. Hykel that "certain corrections and amendments" pertinent to the Hans' application were required; the DOL advised that the documents were to be submitted by March 10, 2001. (AR 129, 136.)

Mr. Hykel did not respond to the DOL's request; however, Petitioners claim that they nonetheless engaged him again, to submit a second application for alien employment on Mr. Han's behalf, which he did on April 16, 2001.[3] Because the application was filed before April 30, 2001, the Hans were eligible under INA § 245(i) to file for adjustment of status, *i.e.*, to pursue a green card, during removal proceedings without first having to

---

[2]Approval of such an application would assist the Hans in adjusting their green card status. "An adjustment of status is merely a procedural mechanism by which an alien [already within the United States] is assimilated to the position of one seeking to enter the United States." *Matter of Rainford*, 20 I. & N. Dec. 598, 601 (BIA 1992); *see also* 8 U.S.C. § 1255(a).

[3]Petitioners note that Mr. Hykel was suspended from practice by the Disciplinary Board of the Supreme Court of Pennsylvania on March 8, 2001, more than one month before he filed their second application. In fact, on that date, Mr. Hykel was suspended from practice for two years before the Executive Office of Immigration Review ("EOIR"). (AR40.) Hykel was later suspended by the Supreme Court of Pennsylvania on January 23, 2002. (AR60-61.)

3

leave the United States.[4]  The basis, however, for actually obtaining a status adjustment ostensibly remained grounded in approval of Petitioners' alien employment application to the DOL.

On April 19, 2001, only a few days after the Hans allegedly re-engaged Mr. Hykel to submit their application for employment certification to the DOL, the Hans hired a new attorney, John Seehousen.  (AR175.)  That same day, Mr. Seehousen moved for a continuance of the hearing scheduled May 3, 2001; he stated that, at that point, he still had not met Mrs. Han.  (*Id.*)  The hearing was continued based on this request and several times afterward in the wake of September 11, 2001.  Mr. Seehousen ultimately moved to withdraw in April 2002; in support, he stated, "[The Hans'] decision to retain new counsel together with their failure to cooperate with counsel makes it impossible for counsel to properly represent [the Hans] in these proceeding[s]."  (AR159.)  The motion to withdraw was granted and the Hans subsequently engaged Michael Choi to represent

---

[4]Under INA § 245(i), an alien physically present in the United States, who is the beneficiary of:

  (i) a petition for classification under section 204 that was filed with the Attorney General on or before April 30, 2001; or

  (ii) an application for a labor certification under section 212(a)(5)(A) that was filed pursuant to the regulations of the Secretary of Labor on or before such date; . . .

may apply to the Attorney General for the adjustment of his or her status to that of an alien lawfully admitted for permanent residence. The Attorney General may accept such application only if the alien remits with such application a sum equalling $ 1,000 . . . .

8 U.S.C. § 1255(i).

them.[5]

On May 6, 2002, the DOL requested follow-up information regarding the Hans'
second alien employment application from Mr. Hykel and gave them until June 20, 2002
to respond. (AR36.) The record does not indicate whether either Mr. Seehousen or Mr.
Choi was also notified of the DOL's request. No response was lodged by Mr. Hykel, and
the second application was deemed abandoned.

Mr. Choi represented the Hans before the IJ on August 22, 2002 where they
conceded removability and were granted voluntary departure. The Hans were given until
December 20, 2002 to depart the United States or, in the alternative, if they failed to
depart, they would be removed to Canada. (AR139.) The IJ warned the Hans that should
they fail to depart voluntarily by the ordered date, they would be ineligible for certain
forms of relief, including adjustment of status, for a period of ten years. (AR139-40); *see
also* 8 U.S.C. § 1229c(d).

A month before the voluntary departure deadline, on November 20, 2002, the Hans
filed a motion to reopen alleging Mr. Hykel had rendered ineffective assistance of
counsel. They submitted various documents they claimed rendered them in compliance

---

[5]The record does not make clear on exactly what date Mr. Choi was retained. It does
reflect that, by June 27, 2002, Mr. Choi was listed as the attorney of record in the Hans'
case and he was forwarded a Notice to Appear for a hearing before the Immigration Court
on August 22, 2002.

with the BIA's "*Lozada* requirements."[6] *See Matter of Lozada*, 19 I. & N. Dec. 637 (BIA 1988) (establishing the prerequisites an alien must satisfy to raise a claim of ineffective assistance of counsel). The IJ, finding evidence of ineffective assistance lacking and noting that the Hans had been warned about the consequences of failing to voluntarily depart in a timely fashion, denied the motion. In particular, the IJ found that Petitioners did not satisfy *Lozada* because they had failed to provide details of their agreement with Mr. Hykel and because there "was no evidence indicating that they ha[d] informed their former attorney of their allegations." (AR103.) The IJ noted that a letter *addressed to* the Disciplinary Board of the Supreme Court of Pennsylvania was submitted to the court but that there was no evidence before it "that the complaint was filed with the the Pennsylvania Supreme Court or the appropriate disciplinary authorities." (*Id*.) The Hans timely appealed to the BIA.

Before the BIA, Petitioners submitted additional evidence, not before the IJ, in support of the motion to reopen, including their retainer agreement with Mr. Hykel, the

_____

[6]An alien moving to reopen based on an ineffective assistance of counsel claim must: (1) file an affidavit in support of the motion that attests to the relevant facts and includes "a statement that sets forth in detail the agreement that was entered into with former counsel with respect to the actions to be taken on appeal and what counsel did or did not do in this regard"; (2) inform former counsel of the allegations and give former counsel an opportunity to respond; and (3) file a complaint against former counsel with the appropriate disciplinary authority or, if no complaint is filed, provide a reasonable explanation of the decision not to file. *Lu v. Ashcroft*, 259 F.3d 127, 132-34 (3d Cir. 2001) (internal quotation omitted) (holding that the BIA's three-prong test established in Lozada was not an abuse of the BIA's discretion). In addition, an alien mst show that he was prejudiced by counsel's inadequate performance.

6

DOL's first request for supplemental information, and a letter from the Office of the Disciplinary Board of the Supreme Court of Pennsylvania to Mr. Han requesting more information to assist in evaluating his complaint against Mr. Hykel. The BIA dismissed the appeal and made clear that the new evidence submitted was not considered by the Board since the Hans had not filed a motion to remand but rather, a motion to reopen. The BIA stated that it could not consider new evidence presented for the first time on appeal as its function was to review, and not create, a record. Based on the evidence that had been before the IJ, the BIA concluded that the Hans had failed to comply with the *Lozada* requirements. It, too, found that the Hans had failed to set forth in detail their agreement with Mr. Hykel "with respect to the actions to be taken and what representation counsel did or did not make to [Mr. Han]" (AR3.) In addition, the BIA found that the Hans had not notified Mr. Hykel of the allegation of ineffective assistance. Assuming the letter to the Supreme Court of Pennsylvania was a complaint, there was no indication a copy was provided to Mr. Hykel, the BIA found. Moreover, the letter was drafted only two days prior to filing the motion to reopen in the Immigration Court, such that Mr. Hykel, even if he did receive a copy, was afforded no opportunity to respond. Finally, the BIA found that the Hans had not been prejudiced by Mr. Hykel's performance – Petitioners subsequently retained the services of Mr. Seehousen and Mr. Choi, respectively, but the record contained no evidence that Mr. Han informed either of them about the alien employment certification pending before the DOL or Mr. Hykel's initial

7

failure to provide the DOL with the requested information.[7]

## II.  Standard of Review

We review the BIA's denial of a motion to reopen immigration proceedings for abuse of discretion.  *Ezeagwuna v. Ashcroft*, 325 F.3d 396, 409 (3d Cir. 2003).  We have observed previously that "motions to reopen immigration proceedings are 'traditionally disfavored . . . for the same reason we disfavor 'petitions for rehearing and motions for a new trial,' namely, the need for finality in litigation."  *Sevoian v. Ashcroft*, 290 F.3d 166, 171-72 (3d Cir. 2002) (quoting *Lu v. Ashcroft*, 259 F.3d 127, 131 (3d Cir. 2001)).

We review constitutional challenges, like Petitioners' claim of ineffective assistance, *de novo*.  *See De Leon-Reynoso v. Ashcroft*, 293 F.3d 633, 635 (3d Cir. 2002). The BIA's factual findings, however, are reviewed for substantial evidence.  *See Abdulrahman v. Ashcroft*, 330 F.3d 587, 597 (3d Cir. 2003) ("Findings of fact ... including adverse credibility determinations, will be upheld to the extent that they are supported by reasonable, substantial, and probative evidence on the record considered as a whole.") (citation omitted); *Lin v. Ashcroft*, 377 F.3d 1014, 1024 (9th Cir. 2004) ("We review findings of fact regarding counsel's performance for substantial evidence."); *But see United States v. Quintero-Barraza*, 78 F.3d 1344, 1347 (9th Cir. 1995) (requiring *de*

---

[7]The BIA noted that Mr. Han had stated in his affidavit supporting the motion to reopen that he believed Mr. Choi should have assisted him with the labor certification, and that he needed such assistance, but, the BIA found, Mr. Han made no attempt to comply with the *Lozada* factors with respect to Mr. Choi.

*novo* review of whether the facts sufficed to establish prejudice).

## III. Discussion

Petitioners claim that Mr. Hykel rendered ineffective assistance of counsel by failing to submit additional information to the DOL on two separate occasions; they claim that they suffered clear prejudice because Mr. Hykel's inaction deprived them of the ability to avail themselves of INA § 245(i) and pursue a status adjustment while remaining in the United States. The Hans' motion to reopen was filed on this basis; it was denied by the IJ, and that denial was affirmed by the BIA.

The Hans argue that "the IJ abused her discretion by denying the motion to reopen and the Board abused its discretion by failing to consider the record as a whole when affirming the IJ's decision." (Appellants' Opening Br. at 15.) But where, as here, the BIA issues its own decision on the merits and not simply a summary affirmance, we review the decision of the BIA, not the IJ. *Gao v. Ashcroft*, 299 F.3d 266, 271 (3d Cir. 2002). "Only if the BIA expressly adopts or defers to a finding of the IJ, will we review the decision of the IJ." *Kayembe v. Ashcroft*, 334 F.3d 231, 234 (3d Cir. 2003) (citation omitted).

As to Petitioners' threshold contention that the BIA abused its discretion in "failing to consider the record as a whole," their assertion is without merit. The BIA did "consider the record *placed before it*," *Blanco v. INS*, 68 F.3d 642, 647 (2d Cir. 1994) (emphasis added); it refused, however, to "engage in factfinding in the course of deciding

9

[an] appeal[]," correctly noting that it is proscribed from such activity: "A party asserting that the Board cannot properly resolve an appeal without further factfinding must file a motion for remand. If further factfinding is needed in a particular case, the Board may remand the proceeding to the immigration judge or, as appropriate, to the Service." 8 C.F.R. § 1003.1(d)(3)(iv). Petitioners did not file a motion to remand nor was their original motion to reopen before the IJ based upon the discovery of new evidence. Even if Petitioners had taken such steps, such motions shall not be granted unless it appears to the Board that the evidence sought to be offered "is material and was not available and could not have been discovered or presented at the former hearing." 8 C.F.R. § 1003.2(c)(1); *see also INS v. Abudu*, 485 U.S. 94, 104-05 (1988); *Ezeagwuna*, 325 F.3d at 408-11. With one exception, each piece of additional evidence Petitioners sought to introduce before the BIA – including their retainer agreement with Mr. Hykel, the DOL's first request for supplemental information,
and Mr. Han's first labor certification application – could have been presented to the IJ. Only the letter from the Office of the Disciplinary Board of the Supreme Court of Pennsylvania to Mr. Han requesting more information to assist in evaluating his complaint against Mr. Hykel postdates the motion to remand; but even so, the letter is not material in that the BIA did not adopt the IJ's finding that no complaint had been filed which, presumably, the letter at issue served to rebut. Moreover, the outcome of the BIA's decision would not have changed based upon the letter since the Board found that

10

the Hans also had failed to meet prongs one and two under *Lozada*. (AR3.) All three prongs of *Lozada*, and a demonstration of prejudice, must be fulfilled.

With respect to Petitioners' claim that the BIA abused its discretion in affirming the denial of the motion to reopen based on ineffective assistance, we disagree. A claim of ineffective assistance, if properly established, can constitute proper grounds for reopening a removal proceeding. *Lu*, 259 F.3d at 132. As noted above, the BIA established a three-step procedure for establishing "egregious" ineffective assistance that would justify reopening in *Lozada*, 19 I.& N. Dec. at 638. The *Lozada* procedure first establishes that an ineffective assistance motion should be supported by an affidavit attesting to the relevant facts, including but not limited to a statement that sets forth in detail the agreement that was entered into with former counsel. *Id.* Second, before the allegations are presented to the BIA, former counsel must be informed of the allegations and allowed the opportunity to respond. *Id.* Third, the motion should reflect whether a complaint has been filed with the appropriate disciplinary authorities regarding the allegedly ineffective representation, and if not, the reason therefor. *Id.* Finally, an alien must show that he was prejudiced by counsel's inadequate performance. *Id.* at 640.

The BIA concluded that the Hans had failed to comply with the first and second prongs of *Lozada* and, in any event, had failed to demonstrate prejudice. First, it found that, though Mr. Han, whom the BIA referred to as the lead respondent, submitted an affidavit, the affidavit failed to set forth in detail their agreement with Mr. Hykel "with

11

respect to the actions to be taken and what representation counsel did or did not make to [Mr. Han]" (AR3.) The BIA observed that the affidavit did not clearly establish who Mr. Hykel represented – the lead respondent Mr. Han or his entire family. (*Id.*) Moreover, the affidavit did not provide details regarding either Mr. Han's or his prospective employer's level or willingness to cooperate on the labor certification application. (*Id.*)

Mr. Han claims that his affidavit was sufficient to meet the first requirement of *Lozada* and cites *Lo v. Ashcroft*, 341 F.3d 934 (9th Cir. 2003), where the Court found that petitioners who submitted affidavits explaining counsel's negligent role in a missed hearing date had complied with *Lozada's* first prong. In *Lo*, however, multiple affidavits were submitted, notably, one by former counsel himself conceding that his office had inadvertently made a mistake. Also in that case, the petitioner's affidavit left no gaps or questions as to what more they could have done to appear as scheduled, whereas here, Mr. Han's affidavit does not address the focal point of his complaint – the supplemental materials – except to say Mr. Hykel never provided them to the DOL. We do not know whether Mr. Hykel asked for the materials from Mr. Han or the employer, or whether Mr. Han or the employer made a move to provide them to Mr. Hykel. And, in terms of the DOL's May 6, 2002 request for follow-up information regarding the Hans' second alien employment application, it is significant that Mr. Han had retained new, private counsel by that point. The record does not indicate whether he informed either Mr. Seehousen or, later, Mr. Choi of his pending application or the DOL's request.

12

Regarding *Lozada's* second prong, the BIA found no evidence that Mr. Han had notified Mr. Hykel of the allegations being levied against him. The record furnished along with the motion to reopen before the IJ included no letter directly addressed to Mr. Hykel and the state bar complaint similarly did not copy Mr. Hykel. Moreover, the letter was drafted only two days prior to filing the motion to reopen in the Immigration Court, such that Mr. Hykel, even if he did receive a copy, was afforded no opportunity to respond.

Petitioners respond that they did give Mr. Hykel proper notice by sending him a copy of Mr. Han's affidavit by regular and certified mail to his last known business address. Petitioners claim this good faith effort meets the bar set by *Lozada* under these circumstances, where counsel had been suspended from the practice of law and allegedly had no formal business address. Alternatively, it seems, the Hans argue that Mr. Hykel already knew his professional credibility was being challenged since he had been suspended. But, despite Petitioners' claim that they tried to notify Mr. Hykel, the record contains absolutely no evidence of this purported effort. And, even if Mr. Han had copied Mr. Hykel on the state bar complaint, the BIA correctly noted that two days is not an adequate opportunity to respond to the allegations.

Finally, the BIA found that the Hans had not been prejudiced by Mr. Hykel's performance – Petitioners subsequently retained the services of Mr. Seehousen and Mr. Choi, respectively, but the record contained no evidence that Mr. Han informed either of

13

them about the alien employment certification pending before the DOL or Mr. Hykel's initial failure to provide the DOL with the requested information. When Mr. Han retained new private counsel, only days after Mr. Hykel filed the second employment certification application, he could have informed counsel of the pending application or, at that point, filed a third application still in time to meet the April 30, 2001 deadline.[8] The record is devoid of evidence that any such steps were taken.

The BIA's factual findings are supported by substantial evidence and the Board did not abuse its discretion in affirming the denial of the motion to reopen. For all of the reasons stated above, we will DENY the petition for review.

---

[8]It is for the same reason that the Hans have not been "prevented from reasonably presenting" their case in violation of their Fifth Amendment due process right to be represented by counsel during immigration proceedings. *See Ponce-Leiva v. Ashcroft*, 331 F.3d 369, 377 (3d Cir. 2003). Because either of their subsequent attorneys could have pursued the Hans' claims, Mr. Hykel's failures were not the determinative factor in the Hans' inability to seek adjustment of status. Accordingly, any due process claim the Hans may present has no merit.